### No. 254.

### W. J. MOBLEY ET AL. VS. POLICE JURY OF BOSSIER PARISH ET AL.

Under the provisions of Article 250 of the Constitution, in all cases in which the Legislature passes an act removing the parish seat of any parish, it must order a special election for the purpose of ratification or rejection of the act by the electors of the parish.

The Legislature has, in such cases, the full power by a special act to prescribe rules for conducting such elections, and to adopt such parts of the general election laws as may suit the purpose. Article 46, which prohibits the enactment of special or local laws for opening or conducting elections, has no reference to special elections required by the Constitution in cases of removals of parish seats.

APPEAL from the Second District Court, Parish of Bossier. *Boone,* J.

*J. A. Snider* for Plaintiffs and Appellees:

Act 33 of 1888 conflicts with Articles 46, 47, 30 and 250 of the Constitution.

1. It violates Article 46 by passing a local and special law "for the opening and conducting of elections."
2. It violates Article 47 by indirectly enacting a local or special law by the partial repeal of general laws, viz: the general election and general registration laws.
3. It violates Article 30 by amending the general election law by reference to it.
4. It violates Article 250 by failing to submit the act in its entirety to the vote of the people affected by it, and by providing for a multitude of elections, and again by failing to provide for a definite removal of Bossier parish seat from one specified locality to another fixed locality. Act 33 of 1888 compared with the general election and registration laws. All acts relative to the removal of parish seats, passed since the adoption of present Constitution, except Act 33 of 1888, have ordered elections, in pursuance of Article 250, under

general election laws. or at congressional elections, and this is a legislative construction of the Constitution, supporting plaintiff's contention. References to said acts by sections and numbers.

_Alexander & Blanchard, Land & Land_ and _Joannes Smith_ for Defendants and Appellants:

Question at issue: Constitutionality of Act No. 33 of 1888, relating to removal of parish seat of Bossier parish.

Act 58 of 1877 and Act 101 of 1882 relate solely to general elections, or those at which members of the General Assembly, State, district, parish and ward officials are voted for. They have no applicability to special elections such as that contemplated in Article 250 of the State Constitution.

Sections 4 and 37 of Act 58 of 1877, and Section 5 of Act 101 of 1882 prescribe no duty for the returning officer to perform in respect of elections held on the question of removing parish seats.

Act 123 of 1880, which is the general registration law, requires no revision of registration except prior to general elections at which officials are voted for. See Section 39.

The General Assembly has never passed any general law "for the opening and conducting" of the special elections contemplated by Article 250 of the Constitution. Until it does so the Legislature is competent, in any act directing such special election, to determine how it shall be opened and conducted. Act 33 of 1888 is not, therefore, violative of clause 1 of Article 46 of the Constitution.

Act 33 of 1888 is not a local or special law, but is a general or public law, because it affects the community as a whole of one of the political subdivisions of the State. Articles 46, 47 and 48 of the Constitution do not, therefore, apply to it.  35 Ann. 1141; 39 Ann. 458; 33 Ann. 568; 35 Ann. 492; 39 Ann. 447.

The act relates to nothing except the removal of the parish seat and how it shall be accomplished, and this object is expressed in the title. Not violative, therefore, of Articles 29 and 30 of the Constitution.

The opinion of the Court was delivered by

POCHÉ, J.   The object of this litigation is to enjoin the execution of Act 33 of the General Assembly, approved June 29, 1888, entitled "An Act removing the parish seat of Bossier parish to the depot at Benton, Vanceville, Alden's Bridge, Bossier City or Haughton, and providing for the submission of this act to the electors thereof for ratification in accordance with Article 250 of the Constitution."

The ground of resistance is the alleged unconstitutionality of the act, which is charged to be violative of seven articles of the Constitution.

The defense is practically a general denial.  The district judge declared the act to be unconstitutional and rendered judgment in favor of plaintiffs, and defendants appeal.

The following articles are alleged to be violated by the statute in question:  Articles 29, 48, 30, 46, 47, 250, and Article 1 of the Bill of Rights; and we shall discuss them in the order herein presented.

The act under consideration contains eight sections:

The first section purports to remove the parish seat from its present location to one of five designated places.

The second section directs the police jury to order an election for the ratification or rejection of the act.

The third section provides for the mode of election and for the announcement of the result; and it directs, in case of ratification, that an election be held for the selection of a new parish seat, out of the five designated places.

The fourth section is intended to give effect to the election in case any place shall receive a majority of the votes cast.

The fifth section provides for an election between the two points receiving the greatest number of votes at the second election, in case neither of the five places had received a majority of the votes cast at the previous election.

The sixth section provides for the appointment of commissioners of election by the police jury, and makes it the duty of that body to proclaim the result of said election or elections, in five days after holding the same.

The seventh section provides that no fees shall be allowed to any of the officers entrusted with the election or elections ordered in the act, and directs that no revision of registration shall be necessary for the purposes of said elections.

Section eight reads as follows: " That the election or elections herein provided for shall be held in pursuance of the general election laws, in so far as they are not in conflict with this act, and at the polling places now established by law."  1, 2 and 7.

Counsel for plaintiffs offers no argument in support of his position touching the nullity of the statute as affected by Articles 29, 48 and 1 of the Bill of Rights, of the Constitution.

In his brief he in terms submits these points without argument, and in his oral argument he candidly abandoned all three.  Hence we consider them as eliminated from the discussion.  We need only to add that after due consideration of their respective provisions, we find that neither of the articles in question has any injurious effect in their application to the contention involving the alleged unconstitutionality of the act under investigation.  The act embraces but one object and *that* is fully and clearly expressed in its title.

Should it be conceded that the act is a local or special law, it cannot be affected by Article 48, for the simple reason that its enactment is specially authorized, if not required, by Article 250, and hence it cannot. be subjected to the provisions of Article 48.  Planting and Manufactur-.

ing Company vs. Tax Collector, 39 Ann. 458, and authorities therein cited.

As to Article 1 of the Bill of Rights, no suggestion has been made either in the pleadings or in argument, of its bearing on the subject of discussion, and our imagination can suggest none.    3 and 5.

The points made under Articles 30 and 47 are germane, and hence they may be discussed together.

Article 30 reads:    "No law shall be revised or amended by reference to its title, but in such cases the act revised or section as amended shall be re-enacted and published at length."

Article 47 provides:    "The General Assembly shall not indirectly enact special or local laws, by the partial repeal of a general law; but laws repealing local or special laws may be passed."

The argument on this objection is predicated mainly on the provisions of the eighth section of the act, which is hereinabove transcribed, and also on those provisions of the statute which direct that the return of the special election shall be made by the police jury; that the commissioners of election shall be appointed by that body, and that no revision of registration shall be made prior to holding the election or elections contemplated by the act.    On these subjects the provisions of the general election laws are different; hence the contention is that the act under discussion is constitutionally vicious for the reason that it proposes to amend the general election laws by reference to the title only, and for the further reason that it exhibits a legislative attempt to enact a special or local law by the partial repeal of a general law.

Avowedly and inevitably the election ordered by the act was of necessity a special election.

Article 250, which is the only mandate of the Legislature on the subject, provides in express terms that:    "All laws    *    *    removing parish seats shall before, taking effect, be submitted to the electors of the parish    *    *    at a special election held for that purpose, and be adopted by a majority vote    *    *    cast at such election."

That construction of the article flows from its plain and unambiguous language; it is not only conceded to be correct by plaintiffs' counsel, but it is pressed as an argument.

Now from the very text of Act 98 of 1877, as amended by Act 101 of 1882, which contains the general election laws of the State, it appears that they are intended to apply exclusively to elections of State, district, parish and municipal officers, and of presidential electors and members of Congress.    There is no reference to special elections for the removal of parish seats in the amendatory act of 1882, and there is not,

as there could not be, any intention to regulate such elections, in the act of 1877, for the plain reason that the constitutional provision which gives them birth was itself not yet in existence.

It is, therefore, safe to conclude that Article 250 cannot be construed as requiring such elections to be conducted under the general election laws; nothing in the article or in any other part of the Constitution directs the manner in which such elections shall be conducted, or suggests any inference that the General Assembly is inhibited from enacting special regulations for the conduct of the elections contemplated by the article. Hence follows the irresistible conclusion that the inherent power of the Legislature to legislate on the subject matter is unchecked or unrestricted by any constitutional limitation. It therefore existed and its exercise in the act of 1888, is fully warranted.

It was in the exercise of that unquestioned power that the law maker provides for the conduct of the election in the fifth, sixth, seventh and eighth sections of the act.

No portion of the act, and no language used in its entirety can justify the assumption that the statute purports or intends to repeal, amend, or in any way alter any other law on the statute books, and particularly any section or provision of the existing general election laws of the State.

These laws are yet in full force in their original autonomy, unaltered and untouched by the statute under discussion, or by any subsequent legislation that we are aware of, or which has been pointed out in this contest.

Until such legislation occurs, as it was conceded in argument, any election for office to be hereafter held in the State must be conducted by the provisions of the general election laws which are now contained in Act 98 of 1877 as amended by Act 101 of 1882.

What then becomes of the argument that either of those general laws has been amended or modified by the act under discussion?

As it is demonstrated that the Legislature had the untrammelled power to regulate the special election which its constitutional duty required it to order, it follows that it had the unquestioned right to borrow, as it were, certain rules which it found suited to the purpose in hand from the general election laws, and that, and nothing else, is the purport and effect of the eighth section of the act.

As soon as the elections ordered thereby have been held, the object of the legislation is accomplished, its mission is filled, and to all intents and purposes of future action it will cease to have any effect or any existence.

But notwithstanding the foregoing considerations the point is made that by providing special rules for the conduct of that election the Legislature has transgressed constitutional limitations. 4.

And that brings us to plaintiffs' fourth ground of objection, which rests on Article 46, which is to the effect that:

"The General Assembly shall not pass any local or special law." * *

"For the opening and conducting of elections or fixing or changing the place of voting."

Under the plainest rules of construction the scope of this article must be tested with reference to, or in connection with, Article 250, under the textual provisions of which the Legislature is empowered and may eventually be required to order special elections for the purposes therein specified.

As it has been shown that there is not, and that there could not be, a general law governing such elections, it follows beyond a doubt, that the power to legislate by special acts for the conduct of these elections must be in the Legislature, for otherwise, such elections could not be held legally.

Hence we conclude that the framers of the Constitution did not and could not have intended to paralyze by Article 46, or in one and the same breath, a necessary power which they created and conferred in Article 250.

The limitation contained in Article 46 means that in general elections, the Legislature cannot provide for a mode of conducting or opening elections in one locality or part of the State different from others, by means of a local or special law. Such differences can be operated or effected, as it is done, only in a general law. But we are clear in the conviction that the article has no reference or application to special elections held under the mandate of Article 250. 6.

On the ground of the objection growing out of Article 250, the argument seems to be that the act is obnoxious to the Constitution because the statute does not squarely remove the parish seat from one locality to another particular or designated spot or point, but from one place to an indefinite number of places at the same election.

From our reading of the act it appears that the intention was unequivocally to remove the parish seat from Bellevue, which is the exercise of a power clearly conferred by Article 250. It is then clearly submitted to the votes of the electors for ratification or rejection.

Under the article the Legislature had the undoubted power to finally select another locality as the parish seat; it chose to leave the exercise of that power to the people. It had the greater power, and that cer-

tainly included the less. Where is the harm under a constitutional test?

As argued by counsel, the mode adopted may be more complicated, and may prove more expensive; or it may be unwise and unfair, but it is not unconstitutional; and surely it cannot be pretended that the judiciary department of the State should assume or usurp the power and function of enforcing its own views of wisdom and propriety on the law making power.

The only mandate of the judiciary is to see that the law maker shall not transgress beyond constitutional barriers; and true wisdom dictates that even that power shall never be exerted but in extreme cases.

The legislation which we have considered, and which we have endeavored to expound, does not present such a case, and we must, therefore, decline to interfere with the execution of the solemn expression of legislative will in the matters which are herein submitted to our review.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed; and it is now ordered that the injunction herein obtained by plaintiffs be dissolved and their action dismissed at their costs in both courts. And it is further ordered that the right of defendants to sue for and recover damages on account of said injunction be reserved.