ROGERS, Justice.
 

 Prior to October 3, 1933, the Town of Bernice applied to the Public Works Administration for a loan and grant to construct a waterworks
 
 system. At its
 
 regular monthly meeting held on October 3, 1933, the board of aldermen of the town, acting under the provisions of Act No. 80 of 1921, Ex.Sess., adopted a resolution calling an election and submitting to the electors a proposition to issue $49,000 in revenue bonds for the purpose of constructing a wáterworks system. After its adoption, a
 
 *745
 
 copy of the resolution and notice of election, in which the figure $40,000 had been erroneously inserted for the figure $49,-000, was duly published in the official journal. The election was held on November 14, 1933, and the returns thereof showed 106 votes for the proposition and none against it. Because the Public Works Administration had ceased to act on applications emanating from Louisiana, the canvass of the election returns was held in the clerk’s office until September 16, 1936, when they were promulgated. The promulgation followed the receipt by the town of a letter dated September 11, 1936, from the Public Works Administration offering a grant of $22,090 and a loan of $27,000, secured by its revenue bonds, to enable the town to construct a waterworks system. On October 24, 1936, the canvass of the election returns was filed for record with the secretary of state and with the clerk of court of Union Parish.
 

 On October 6, 1936, the mayor and board of aldermen of Bernice adopted resolution No. 185, accepting the offer of the Public Works Administration. And on October 28, 1936, the mayor and board of aldermen of the town adopted resolution No. 186, authorizing the issuance of $27,000 of revenue bonds, which resolution and proceedings were published in five weekly issues of the official journal, beginning November 11, 1936.
 

 A notice requesting sealed bids from contractors for the construction of the waterworks system was published in three weekly issues of the official journal, beginning November 18, 1936, pursuant to which bids were received and a tentative acceptanee of their bids was given to certain of the bidders.
 

 On December 23, 1936, the Town of Bernice, through its mayor and clerk, executed a mortgage covering the property composing or to compose the waterworks system and pledging the revenues thereof as security for the $27,000 of bonds authorized by the aforesaid resolution No. 186 of the mayor and board of aldermen of the town.
 

 None of the bonds referred to in the proceedings in question have been issued or sold, but the Town of Bernice, through its proper officers, proposes to have $27,-000 of revenue bonds printed and delivered to the Public Works Administration as consideration for a loan for a like' amount and a grant’ of $22,090, the entire proceeds of the loan and grant to be used in the construction of a waterworks system for the town.
 

 On December 28, 1936, which was more than sixty days after the promulgation of the election returns, Charles E. Miller, a resident and taxpayer of Bernice brought this suit against the town, the mayor and the clerk, to restrain them from issuing the revenue bonds described in the aforesaid resolution No. 186 of the mayor and board of aldermen, and praying that the election proceedings held in connection with the bonds, the resolution authorizing their issuance and the mortgage executed and recorded thereunder be declared null and the mortgage erased from the public records.
 

 The defendants, in addition to their answer, filed pleas to the jurisdiction of the
 
 *747
 
 court, of prescription and an exception of no right or cause of action.
 

 The court below overruled the exception of no right or cause of action, but sustained the plea to the jurisdiction and the plea of prescription. The court also rejected plaintiff’s demand on the merits of the case. Plaintiff has appealed.
 

 Plaintiff’s contentions as embodied in his petition are, that the original resolution of the Town of Bernice adopted on October 3, 1933 violates Act No. 80 of 1921, Ex. Sess., in that it does not contain a particular description of the property to be mortgaged; that there is a variance as to the amount of the revenue bonds between the resolution calling the election and the published notice thereof which vitiates the election proceedings; that the lapse of two years and ten months between the date of the canvass of the election returns and their promulgation bars the defendants from issuing the bonds; that defendants are precluded from issuing the bonds by the statement on the ballot that they are “to run for thirty years,” whereas some of the bonds will mature prior to thirty years from their date and the date of the election and some of them will mature more than thirty years from the date of the election, although within thirty years from their date, no bonds becoming due until at least three years from their date; that defendants are without right to issue the bonds, as almost three years has elapsed between the date of the election and the date of their proposed issuance; that the mortgage is invalid, because, first, it'authorizes the trustee to operate the waterworks system in the event of default, notwithstanding such authorization was not given by the electors; secondly, it contains a provision forbidding the institution of a foreclosure suit without the consent of at least 20 per cent, of the outstanding bondholders; thirdly, it enumerates events constituting default other than the mere failure to pay principal and interest at their respective maturities; and, fourthly, the description of the mortgaged property is vague and indefinite and in conflict with the description of the property as set forth in the resolution ordering the election.
 

 The defendants vigorously dispute the conclusions of law embraced in plaintiff’s contentions, and, in addition thereto, urge that the court is without jurisdiction to consider the contentions and that plaintiff’s right to question the election proceedings,' bond issue and security is barred by prescription. Defendants also urge that ample authority for the issuance of the bonds is contained in the provisions of Act No. 222 of 1934. As hereinabove stated, the court below sustained the pleas of want of jurisdiction and prescription as well as rejecting plaintiff’s demands on the merits of the case..
 

 As the suit was brought more than sixty days after the promulgation of the election returns, the pleas of want of jurisdiction and prescription are well-founded, and the judgment sustaining them should be affirmed.
 

 The pleas are predicated on article 14, section 14 (n) of the Constitution of Louisiana and as provided for and interpreted in section 6 of Act No. 80 of 1921, Ex. Sess;
 

 
 *749
 
 The constitutional provision declares that if the legality of any election, bond issue or tax authorized by the section be not attacked for sixty days after the promulgation of the result of the election, no person thereafter shall be permitted to contest them “for any cause whatsoever;” and that “the authority to issue the bonds, the legality thereof and of the taxes necessary to pay the same shall be conclusively presumed, and no court shall have authority to inquire into such matters.”
 

 Section 6 of Act No. 80 of 1921, Ex. Sess., similarly provides that if no attack be made within the period of sixty days therein provided then no attack “for any cause whatever” shall be permitted thereafter on the regularity, formality, or legality of the election, bond issue, or security authorized under the statute.
 

 The organic law is clear and specific. So is the statutory law. We must assume they mean exactly what they so forcibly declare. The period of prescription which they establish would be of little value if it were subject to qualifications and exceptions. None are provided in the law.
 

 In the case of Roberts v. Evangeline Parish School Board, 155 La. 331, 99 So. 280, we had occasion to consider the constitutional provision and to apply the prescription therein established. There we held that the constitutional provision in terms' too plain to be mistaken withholds jurisdiction of the courts after the lapse of sixty days from the promulgation of the result of any election; that after sixty days the election proceedings, bonds and taxes shall be conclusively held to be valid, and that no one shall have the right to question, and no court shall have authority to entertain any controversy over, théir validity.
 

 The decision in Roberts v. Evangeline Parish School Board has been approved and followed in a number of decisions subsequently rendered by this court. Many of these decisions are mentioned in the case of McGuffie v. Police Jury of Catahoula Parish, 183 La. 391, 163 So. 841.
 

 The Legislature may also limit the time in which the constitutionality or legality of a tax or forced contribution or the issuance of bonds dependent upon the tax may be contested in the courts. Morgan’s L. & T. R. & S. S. Co. v. Tax Collector, 142 La. 190, 76 So. 606.
 

 The limit of time established by law within which a taxpayer may judicially contest the validity of election proceedings and the bond issues, securities given and special taxes authorized in connection therewith was devised in the public interest, to protect the fisc against uncertainty and to protect the bonds from attack, after a reasonable time allowed the taxpayers within which to contest the validity thereof for any cause.
 

 Plaintiff contends that the pleas of want of jurisdiction and prescription cannot avail the defendants, because (1) the proposed bonds are not covered by section 14 (n) of Article 14 of the State Constitution ; (2) the error as to the amount of the bonds in the notice of election, namely $40,-000 instead of $49,000, as set forth in the resolution calling the election, is not cur
 
 *751
 
 able by prescription; and (3) the alleged irregularities in the mortgage given to secure the bonds were not discoverable until the sixty days’ prescriptive period had elapsed.
 

 1. Section 14 (m) of article 14 of the State Constitution empowers the Legislature to authorize municipal corporations to issue revenue bonds for the purpose of constructing, acquiring, extending, or improving any revenue-producing public utility. And Act No. 80 of 1921, Ex.Sess.,.was adopted by the Legislature pursuant to the constitutional authority.
 

 The constitutional provision, section 14 (m), relating to the issuance of revenue bonds, is in the same article and section, and immediately precedes, section 14 (n) establishing the sixty days’ prescriptive period. Hence, it is clear that the framers of the Constitution intended to limit the right to contest all elections, bond issues, securities and taxes authorized under section 14 of article 14 of the State Constitution.
 

 Moreover, section 6 of Act No. 80 of 1921, Ex.Sess., establishes a limit of sixty days within which a taxpayer may judicially contest the legality of all elections held, bonds issued and securities given under the provisions of the statute. And similar statutes have often been held to be valid exercises of legislative power. Morgan’s L. & T. R. & S. S. Co. v. Tax Collector, supra..
 

 2. It is clear that the alleged irregularity can have no harmful consequences. The record shows that 106 votes were cast in favor of the proposition and none against it Whether the voters believed they were casting their votes for a maximum indebtedness of $40,000 or for a maximum indebtedness of $49,000, the fact remains that the indebtedness which the town authorities propose to incur is only $27,000. This amount is well within the amount of any indebtedness as approved by the .voters.
 

 We think the plaintiff is in error in assuming “that prescription was devised as a means of curing immaterial variations from legislative details—not to prevent an inquiry where an important error of substance has taken place.” If this were true, prescription would possess but little remedial value, since immaterial variations would not and do not usually prevent the courts from maintaining the validity of bond issues.
 

 In Fontenot v. Miller Gravity Drainage District No. 3, 159 La. 302, 105 So. 351, plaintiff attacked the election and bond issue for the reasons, that the ballot contained two propositions instead of one; that the ballot limited the tax to 10 mills per annum in violation of the constitutional provision for an unlimited tax; and that the ballot contained two impossible conditions, as it limited the total taxes to be collected to $15,000, while the sum of $32,130 was required to retire the proposed bonds. The plaintiff failed to file the suit within the sixty days specified by section 14 (n) of article 14 of the State Constitution. Defendant pleaded the prescription established by the Constitution. This court, in sustaining the plea, held that it was without authority to inquire into any
 
 *753
 
 of the alleged irregularities and illegalities set up by plaintiff.
 

 In Brown v. Chataignier Gravity Drainage District No. 2, 161 La. 309, 108 So. 548, the plaintiff filed suit after the prescriptive period, attacking the validity of the ordinance ordering the bond issue, on the ground that the issue exceeded the limit of forty years as required by the 'legislative act. And this court sustained the plea of prescription interposed as a defense to the suit.
 

 3. The proposed bonds are payable solely from the revenues of the proposed waterworks system, which is mortgaged to secure their payment. The mortgage, therefore, should contain the customary clauses, assuring prospective purchasers their rights will be protected and enforced. Otherwise, the marketability of the bonds may be impeded, if not destroyed.
 

 Any attack on the security of the bonds is an attack on the bonds themselves. Prescription would be of doubtful benefit, if all the acts incidental to the issuance and security of the bonds could be attacked while the bonds themselves could not be attacked.
 

 There is no charge of fraud or gross abuse of discretion in the case, and we can find no reason why the pleas of want of jurisdiction and prescription should not be sustained.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 O’NIELL, C. J., absent
 

 HIGGINS, J., absent.