200 So. 450

**PUGH et al. v. POLICE JURY OF LIVINGSTON PARISH.**

**BROWN et al. v. SAME.**

Nos. 35878, 35879.

Feb. 3, 1941.

M. C. Rownd, of Springfield, Erlo J. Durbin, of Denham Springs, and Rownd & Tycer, of Hammond, for plaintiffs-appellants.

Bolivar E. Kemp, Jr., Dist. Atty., of Amite, Joseph M. Blache, Jr., Asst. Dist. Atty., and Reid & Reid, all of Hammond, and J. M. Barnett, Wade O. Martin, Jr., and George M. Wallace, all of Baton Rouge, for defendant-appellee.

ODOM, Justice.

Act 230 of 1926 authorized and prescribed the procedure for the removal of the parish seat of Livingston Parish from its present location at Springville to "some central point on the Hammond-Covington branch of the Yazoo and Mississippi Valley Railroad". Section 1 of the act provided for an election to be held at a time to be fixed by the police jury for the purpose of determining whether or not the parish seat should be removed from its present location, the new site for the location to be selected by a majority of the votes cast at an election held later for that purpose.

Section 2 of the act provided that the police jury might order an election at such time as it saw fit for the purpose of taking the sense of the voters of the parish as to whether the location of the parish seat should be removed; and Section 3 prescribed the form of the ballot to be used and the manner of voting, and provided further that, in the event two-thirds or more of the votes cast at such election were cast in favor of the removal, then the police jury should order a second election to select a new site for the courthouse, and that, in the event no proposed location received a majority of the votes cast in the first election called for the purpose of selecting a site, then a second election should be ordered, at which second election the two locations receiving the highest vote in the first election should be voted on, and that the location receiving a majority of the votes cast at said election should be declared by the police jury to be the new site or location for the courthouse.

Section 4 of the act provided that the elections should be held under the general election laws of the state in so far as they are not in conflict with the act, and Section 5 provided that, if the election held for the

purpose of taking the sense of the voters on the question as to whether the parish seat should be removed from its present location was carried by two-thirds or more of the votes cast, the parish officers should continue to hold their offices and discharge their duties at Springville, the present location of the courthouse, until suitable and safe public buildings for the use of the parish should be erected "on grounds owned by said Parish of Livingston".

Section 5 further provided that, if the election was carried changing the parish seat, the police jury should provide according to law the means with which to obtain a suitable location and to erect the necessary suitable and safe buildings for courthouse, jail, offices for the sheriff, clerk of court, assessor, police jury, and such other officers as are required by law to have their offices at the courthouse.

Section 6 of the act provided that, in case less than two-thirds of the qualified electors voting at said election to remove the parish seat voted in favor of its removal, then the act should be of no force and effect.

This act was adopted pursuant to the authority granted in Section 2, Article XIV, of the Constitution of 1921, which reads as follows: "§ 2. All laws changing parish lines, or removing parish seats, shall, before taking effect, be submitted to the electors of the parish or parishes to be affected thereby, at a special election held for that purpose, and the lines, or the parish seat, shall remain unchanged unless two-thirds of the total vote cast at such election in each parish affected thereby, shall be in favor thereof."

Acting under the authority conferred by the above-cited act of the Legislature, the Police Jury of Livingston Parish on March 11, 1936, adopted a resolution calling an election to be held throughout the parish to take the sense of the qualified electors on the question whether or not the parish seat should be changed from its present location. The election was held, and, according to the returns made, more than two-thirds of the electors voting at said election voted in favor of its removal. The police jury adopted an ordinance or resolution declaring the results of the election.

Thereafter, on May 5, 1936, the police jury adopted a resolution calling an election to be held throughout the parish for the purpose of selecting a new location for the parish seat, and designated the towns of Doyle and Livingston "to be the two points centrally located on the Hammond-Covington branch of the Yazoo and Mississippi Valley Railroad, and which are hereby recognized by the Police Jury of Livingston Parish as being suitable sites or locations for the parish seat". The election was held, and a majority of those voting at the election were in favor of the Town of Livingston. In due course the police jury adopted a resolution promulgating the results of said election.

A short time thereafter, the police jury accepted a donation of Square No. 5 of the Town of Livingston as a site for the proposed new courthouse and other buildings. In the act of donation the donors reserved

one-half of all the oil, gas, and other mineral rights in and to said square of ground. However, the donors, by a subsequent act placed of record, specifically abrogated that clause or provision in the original act of donation whereby they retained the mineral rights, and declared that Square No. 5 of the Town of Livingston was donated to the parish without any reservation except the right to annul the act of donation in case the property was not used for public purposes.

More than two-thirds of the qualified electors having voted in favor of the removal of the parish seat and more than a majority having voted in favor of the Town of Livingston as the new location therefor, the police jury on November 27, 1936, called an election to take the sense of the qualified taxpayers on a proposition to incur debt and issue bonds in the amount of $100,-000 for the purpose of raising funds for constructing a courthouse, jail, and other necessary buildings at the new parish seat in the Town of Livingston, "the title to which shall be and remain in the public". This election was called and held pursuant to the authority granted under Paragraphs (a) and (b), Section 14, Article XIV, of the Constitution of 1921, in which it is specifically provided that parishes may issue bonds for the erection of courthouses and other public buildings when authorized to do so by a majority of the qualified tax-paying voters at an election held for that purpose.

The election for the bond issue was carried by a majority of those voting, both in numbers and in amount of property, and the police jury adopted a resolution promulgating the results of the election and declaring that the election had been carried in favor of the bond issue.

The resolution promulgating the results of the election was adopted on January 8, 1937. More than two years thereafter, the present suits, which were consolidated, were brought by certain taxpayers of the Parish of Livingston to have annulled and set aside each and every ordinance, resolution, and other proceeding adopted and taken by the Police Jury of the Parish of Livingston pursuant to, and under the provisions of, Act 230 of 1926 relating to the removal of the parish seat, and to have annulled and set aside all ordinances, resolutions, and proceedings relating to the bond issue. They ask that the police jury be restrained from accepting bids for the bonds.

Plaintiffs alleged that all the proceedings of the police jury were null and void because Act 230 of 1926, under which the proceedings were had, was unconstitutional, and, since that act was adopted in violation of the Constitution, it followed necessarily that all such proceedings as were had thereunder were likewise null and void.

Plaintiffs' attack on the constitutionality of the act of the Legislature was met by an exception of no cause of action filed by the police jury. The police jury also filed various pleas of prescription in bar of plaintiffs' attack on the ordinances, resolutions, and proceedings of the police jury relating to the elections held to take the sense of the voters as to the removal of the parish seat and as to its location. And, as to the attack on the bond tax election, the

police jury filed pleas of prescription of 60 days and exceptions of no cause and no right of action.

The exceptions and pleas filed by the police jury were sustained by the trial judge in each of the cases, and each of the suits was dismissed at plaintiffs' costs. The plaintiffs in each case appealed.

 As relates to the attack made on the constitutionality of Act 230 of 1926, the exception of no cause of action was properly sustained by the trial judge. Plaintiffs in each of these cases alleged merely that the act was unconstitutional. In neither case did the pleader specify those sections, articles, or parts of the Constitution which the act offended. Counsel for appellants have not followed up their appeals and have not filed briefs or argued their cases orally. We are therefore at a loss to understand on what grounds the attack was made. Therefore, as to the constitutional question raised, we dispose of the cases as this court has done before under like circumstances. In the case of State v. Hudson, 162 La. 543, 110 So. 749, 750, a certain act of the Legislature was alleged to be unconstitutional, but the court said it was not advised as to what provision of either the State or the Federal Constitution the statute contravened, and "We might very well, therefore, content ourselves by dismissing the matter with the statement often repeated to the effect that a law is presumed constitutional and the burden rests upon the one who asserts to the contrary to point out and to show specifically and clearly wherein the Constitution of the state or of the

nation has been offended against by the terms of the statute attacked."

A like ruling was made in the later case of City of Shreveport v. Pedro, 170 La. 351, 127 So. 865.

Counsel for plaintiffs in each of the petitions alleged that all proceedings had by the police jury were null and void because the act of the Legislature under which they were had was unconstitutional. Since we hold that plaintiffs have failed in their attack on the constitutionality of the act, it follows that the police jury proceedings were valid if carried on in accordance with the act. In other words, unless the police jury proceeded irregularly, did some act prohibited by the law, or neglected to do something required by it, the proceedings must be held to be valid.

██ The petitions specify certain irregularities, one of which is that the police jury, in its resolution calling the election to select the new location for the parish seat, designated the towns of Doyle and Livingston as being suitable sites or locations for the new parish seat, and provided in effect that the electors' choice lay between those two towns. The ordinance declared that each of those towns was centrally located on the Hammond-Covington branch of the Yazoo and Mississippi Valley Railroad and within the zone prescribed by the Legislature, and, taking judicial cognizance of official maps of the various parishes, we find that this is true. The act of the Legislature provided in Section 1 that the electors should select a location for the new parish seat at some central point in

the parish located on the railroad, but did not name or designate the points which might be voted for. The police jury did, however, name the towns on the railroad which would be suitable for the new parish seat, and plaintiffs alleged that it had no right to do so.

■ We find no merit in this objection. The police jury did not select the "zone" within which the new parish seat should be located. The Legislature itself did that. It was specifically provided by the legislative act that the new parish seat should be centrally located on a certain railroad. Unquestionably the Legislature could have provided that, in case more than two-thirds of the voters were in favor of removing the parish seat, it should be located at some other town specifically named. Instead of doing this, it outlined a complicated procedure for the selection of the new location and restricted the location within a specified zone. The police jury suggested either one or the other of two specified towns, each within the zone created by the Legislature, and it is not suggested by the pleadings that there were any other towns within the specified zone suitable for the location of the parish seat. There is nothing in the act of the Legislature prohibiting the police jury from suggesting the towns of Doyle and Livingston, located on the railroad, as being acceptable.

The identical point now urged by these petitioners was made the basis of a suit filed by other taxpayers in 1936, styled State ex rel. Ruben Cooper et al. v. Police Jury of Livingston Parish et al., in which the petitioners sought to restrain the police jury from holding the election under the ordinance designating Doyle and Livingston as acceptable locations for the new parish seat. The point urged in that suit was that the ordinance was invalid for the sole reason that the police jury had named those two towns as acceptable.

The police jury excepted to the petition on the ground that it set out no cause of action, which exception was sustained by the trial judge, and plaintiffs' suit was dismissed. Plaintiffs applied to this court for writs of certiorari, mandamus, and prohibition, and prayed that the record be ordered sent up for our consideration. We refused to grant the writ, with this comment: "Exceptions of no cause or right of action are well founded and properly sustained."

That suit was filed approximately four years prior to the date on which the present suits were filed. We gave most careful consideration to plaintiffs' application for writs. We were of the opinion then, and are yet of the opinion, that the police jury was vested with discretion under the circumstances to suggest those two towns as acceptable locations for the new parish seat.

A case quite similar to this one was brought before this court and decided in October, 1889. See Mobley et al. v. Police Jury et al., 41 La.Ann. 821, 6 So. 779. In that case, the police jury of Bossier Parish took steps to remove the parish seat in accordance with the provisions of Act 33 of 1888, which act was adopted under the provisions of Article 250 of the Constitution of 1879, which corresponds to Ar-

ticle XIV, Section 2, of the present Constitution. Practically the only difference between the Constitution of 1879 and that of 1921 with reference to the removal of parish seats is that in the former it was provided that a parish seat might be removed by majority vote, and under the present Constitution the removal must be sanctioned by two-thirds of those voting at the election.

In the Mobley case, plaintiffs attacked the constitutionality of the act. The act was held to be constitutional. The court held that none of the complaints made by petitioners had any merit, and the rulings there, when applied to the present suits, dispose of practically all of the objections here urged, because Act 230 of 1926 and Act 33 of 1888 are almost identical in terms.

■ As relates to the bond tax election, our opinion is, and we hold, that the plea of prescription and the exceptions of no cause and no right of action filed by the police jury were properly sustained. Paragraph (n), Section 14, Article XIV, of the Constitution, reads as follows: "For a period of sixty (60) days from the date of promulgation of the result of any election held under the provisions of this section, any person in interest shall have the right to contest the legality of such election, the bond issue provided for, or the tax authorized, for any cause; after which time no one shall have any cause or right of action to contest the regularity, formality, or legality of said election, tax provision, or bond authorization, for any cause whatsoever. If the validity of any election, special tax or bond issue authorized or provided for, held under the provisions of

this section, is not raised within the sixty (60) days herein prescribed, the authority to issue the bonds, the legality thereof and of the taxes necessary to pay the same shall be conclusively presumed, and no court shall have authority to inquire into such matters. The provisions of this section shall not apply to the City of New Orleans."

The right to contest the validity of elections authorizing the issuance of bonds in cases of this kind exists for 60 days from the date of the promulgation of the results of the election, within which period courts are authorized and empowered to pass upon the validity of any and all proceedings leading up to the issuance of the bonds; but, after the expiration of the 60-day period specified in the Constitution, "no one shall have any cause or right of action to contest the regularity, formality, or legality of said election, tax provision, or bond authorization, for any cause whatsoever." In fact, the Constitution provides that after the expiration of the 60-day period "no court shall have authority to inquire into such matters". The results of the bond tax election were promulgated by the police jury approximately two years prior to the date on which these suits were filed.

The cases in which this court has maintained the 60-day prescription, as provided in the Constitution, are too numerous to mention. It suffices to cite the recent ones. See Miller v. Town of Bernice, 186 La. 742, 173 So. 192; Sealy v. Iberia Parish School Board, 191 La. 223, 185 So. 6; Henning v. Town of Sulphur, 191 La. 979, 186 So. 845; Lapeyronnie v. Police Jury, 192 La. 775, 189 So. 132.

We have carefully considered each and every attack made upon the proceedings relating to the removal of the parish seat and the issuance of the bonds, and our conclusion is that the judgment appealed from, which maintained the exceptions of no cause and no right of action and the various pleas of prescription filed by the defendant police jury, is correct.

The judgment rendered in each of these cases is affirmed, appellants to pay costs.

O'NIELL, C. J., does not take part.

LAND, J., takes no part.