Dear Mayor Villere:
We are in receipt of your request for an Attorney General's opinion regarding the parish seat. Specifically, you have requested our opinion on the following questions:
 1. Do the records of your office, or any archive to which you have access, provide any evidence that a parish seat has ever actually been moved, once established, within the State of Louisiana?
 2. May the St. Tammany Parish Police Jury call an election to move the parish seat as governed by La. Const. Art. VI, § 1(C), by merely passing a resolution placing the question upon the ballot, or must same be done pursuant to an ordinance which would require a public hearing?
 3. If the parish seat is moved, what would constitute a complete list of all of the governmental offices and buildings which would have to be moved to the new parish seat?
 4. Can the question of moving the parish seat be submitted to a vote of the people without any preceding steps being taken, such as seeking prior approval of the State Bond Commission and seeking advance approval of the State Legislature?
 5. Does the money have to be already available, or does a financing plan have to have already been obtained and approved by any government agencies, before the question is submitted to a vote? In other words, what happens if the people vote yes to change the parish seat, but then the Police Jury cannot also obtain funding to move the required offices?
 6. Can the question of moving the parish seat be placed upon the ballot without an explanation on the ballot itself of what a vote of yes would mean in terms of cost, offices to be moved, buildings to be built, buildings to be abandoned, etc.?
 7. By calling an election to move the parish seat, and placing same upon the November 5, 1996 ballot, have any statutes been violated, specifically La. R.S. 39:1410.63.B?
 8. What would happen to all of the buildings in Covington currently housing each of the offices referenced in item 3 above, if the parish seat were in fact moved? To whom do each of these buildings and the sites upon which they sit belong? If an effort is made to transfer ownership of these sites and/or the public buildings situated upon them, what steps must be followed in addition to a customary act of sale, or other formal document of title transfer? Can the police jury sell these structures to finance a move of the parish seat outside of the City of Covington?
 Question No. 1
Question No. 1 does not require our opinion. We referred your question to the State Archivist, the Secretary of State, and they were not able to find any records regarding the moving of a parish seat. However, our research indicates that the Parish of Livingston moved its parish seat from Springfield to the Town of Livingston in 1936. See, Pugh v. Police Jury of LivingstonParish, 196 La. 1025, 200 So. 450 (La. 1941).
Other cases indicate that removal of a parish seat was not successful. In Andrus v. Board of Police of Opelousas, 41 La.Ann. 697, 6 So. 603 (La. 1889), the Court discussed the fact that in 1886 the courthouse in Opelousas was destroyed by fire and there was a formidable movement to move the parish seat to the rival town of Washington. In Edwards v. Police Jury ofAvoyelles, 39 La.Ann. 855, 2 So. 804 (La. 1887), removal of the parish seat of the parish of Avoyelles from Marksville to another point in the parish was unsuccessful.
Question No. 2
LSA-Const. Art. VI, § 1(C) (1974) clearly provides for a parish governing authority to call an election on the question of changing the parish seat, as follows:
 (C) Change of Parish Seat. The governing authority of a parish may call an election on the question of changing the parish seat. The parish seat shall be changed if approved by two-thirds of the electors voting thereon.
With regard to the passage of a resolution to place the question on the ballot, we must first look to the constitution. LSA-Const. Art. VI, § 22 (1974) provides:
 Section 22. When an election is required in a political subdivision under the provisions of this constitution which require submission to the electors of a proposition or question, the election shall be called, conducted, and the returns thereof canvassed, in accordance with the procedures established by the law then in effect pertaining to elections for incurring bonded indebtedness and special taxes relative to local finance, or as may be otherwise provided by law.
The law in effect pertaining to elections for incurring bonded indebtedness and special taxes relative to local finance is LSA-R.S. 18:1281 et seq.
LSA-R.S. 18:1281 provides a statement of purpose for Chapter 6-A. Bond, Debt, and Tax Elections which is "to implement Article VI, Section 22 of the Louisiana Constitution of 1974 by establishing a uniform procedure for the conduct of elections to authorize the issuance of bonds, the assumption of indebtedness, and the imposition or increase of taxes by political subdivisions." While the matter at hand is not to "authorize the issuance of bonds, the assumption of indebtedness, and the imposition or increase of taxes" per se, it is an election on a proposition/question provided for in Article VI, § 1(C) of the 1974 Louisiana Constitution, and therefore, falls under the procedures of Chapter 6-A. See, Atty.Gen.Op. No. 92-560. Said procedures include the calling of such an election by the governing authority of the political subdivision as follows:
§ 1284. Resolution calling election; proposition
 A. The election shall be ordered by a resolution of the governing authority of the political subdivision which shall state the purpose for which it is called.
* * *
In response to your second question, it is the Attorney General's opinion that calling an election on the question of moving the parish seat as governed by the Louisiana Constitution may be done by the passage of a resolution by the parish governing authority.
Question No. 3
As you pointed out in your request letter, R.S. 33:1236(47) requires the police jury to open and maintain offices and suboffices as may be required for the performance of the duties of parish officials and employees and states that such offices must be maintained at the parish seat. There is one exception for branch offices of the registrar of voters, although the registrar's principal office shall be in the courthouse or in close proximity. LSA-R.S. 18:132.
We have researched the Louisiana Revised Statutes and opinions of the Attorney General in order to provide the following list of public offices which must be maintained at the parish seat:
 1. Office of the parish treasurer shall be located at a site which may be designated by the local governing authority, and shall also maintain an office at the parish seat. LSA-R.S. 33:1651; Op.Atty.Gen. No. 81-90, Feb. 26, 1981.
 2. Multiparish prison shall be domiciled at the parish seat in one of the parishes designated by the board of governors. LSA-R.S. 15:803.
 3. Board of Commissioners of the Parish Industrial School for Youths shall be domiciled at the parish seat of the parish or parishes in which any school(s) are established. LSA-R.S. 15:1034.
 4. Sheriffs, ex officio tax collectors and tax assessors are authorized to open and maintain suboffices, but are required to maintain their principal office at the parish seat. LSA-R.S. 33:1461; Op.Atty.Gen. No. 79-21, Feb. 28, 1979.
 5. The secretary-treasurer of the board of commissioners of a parish gravity drainage district shall maintain an office at the parish seat of each parish. LSA-R.S. 38:1766.
 6. The domicile of the board of commissioners of a consolidated gravity drainage district shall be the parish seat. LSA-R.S. 38:1843.
 7. The domicile of the governing authority for a road district composed of more than one parish, shall be the parish seat of one of the parishes. LSA-R.S. 39:471(10).
 8. The domicile of each road district, sub-road district or consolidated road district is the parish seat of the parish in which it is created. If composed of territory partly within two or more parishes, the domicile is the parish seat of the parish furnishing the most territory. LSA-R.S. 48:578.
 9. Parish health unit shall be domiciled in the parish seat of its parish. LSA-R.S. 40:19; Op.Atty.Gen. 1936-38, p. 339.
 10. The domicile of a multiparish juvenile detention home shall be at the parish seat in one of the parishes which it serves. LSA-R.S. 46:1933.
 11. The domicile of the parish library shall be at the parish seat, and branch libraries may be elsewhere. LSA-R.S. 18:212.
 12. Court house and parish jail shall be located at the parish seat. LSA-R.S. 33:4715; Op.Atty.Gen. 1936-38, p. 679, No. 79-21 and No. 77-43.
As you are aware, it has been and remains the Attorney General's opinion that the parish seat cannot be moved until suitable facilities are available at the new location for the parish officials to conduct the affairs of the parish. Op.Atty.Gen. No. 91-197, July 30, 1991.
Question No. 4
We opined in Attorney General Opinion Number 77-232 that the clear language of Article VI, § 1(C) of the Louisiana Constitution of 1974 provides for the governing authority, in its discretion, to call an election on the question of changing the parish seat and if the change is approved by two-thirds of the electors voting on the proposition, then it is mandatory that the parish seat be changed. We have also opined that (1) if the Constitution requires a political subdivision to hold an election, the procedures for bond and tax elections must be followed, and (2) the procedures for holding a bond or tax election require the approval of the State Bond Commission. Op.Atty.Gen. No. 92-560, Oct. 21, 1992. Additionally, LSA-R.S.18:1285(B)(1)(c) provides:
 (c) The secretary of state shall not prepare or certify the ballot with respect to any election for bond, debt, or tax propositions, conducted pursuant to this Chapter, or in respect to any other election where the proposition is subject to approval by the Louisiana State Bond Commission, including but not limited to any proposition to adopt, amend, or repeal a home rule charter which is subject to such approval, until he receives certification in writing from the chairman of that commission that the commission has considered and approved the proposition.
Therefore, the answer to your fourth question is yes, prior approval of the State Bond Commission is necessary before the question on the location of the parish seat can be placed on the ballot.
With regard to your interpretation of a 1945 opinion of the Attorney General, which concluded that an act of the Legislature and ratification by a two-thirds majority vote of the electorate was necessary to authorize the change of a parish seat, said opinion relied on the 1921 Constitution. The Constitution of 1921 provided that all laws removing parish seats had to be submitted to the electors of the parish before taking effect, and that the change would be ineffective unless two-thirds of the total votes cast at the election were in favor of the change. The Attorney General further opined that the language alllaws meant a law adopted by the Legislature. Since that opinion, the Louisiana Constitution has been amended and a legislative act or advance approval of the Legislature is no longer required.
Question No. 5
The language of the Constitution, Article VI, § 1(C) (1974), is clear and unambiguous, leading us to conclude that no, the money does not have to be available or a financing plan does not have to have already been obtained and approved before the question of moving the parish seat is submitted to a vote of the people. With respect to the second part of your fifth question, as stated earlier, the parish seat cannot be moved until suitable facilities are available at the new location for the parish officials to conduct the affairs of the parish. Op.Atty.Gen. No. 91-197, July 30, 1991.
Question No. 6
LSA-R.S. 18:1284(F) provides:
 F. (1) The preparation of the statement of the proposition to be submitted to the voters at an election shall be the responsibility of the governing authority of the political subdivision ordering the election. The statement of the proposition shall also include a simple and unbiased concise summary in easily understood language which sets forth the substance of the proposition and shall not exceed four hundred words in length. Such summary shall be set in all capital letters and shall be placed at the beginning of the statement of the proposition.
 (2) The secretary of state shall be responsible for ensuring that the statement of the proposition contains the summary as provided in Paragraph (1), of this Subsection.
Therefore, in answer to your sixth question, the question of moving the parish seat shall be explained in a summary by the political subdivision which includes a simple and unbiased concise summary of the substance of the proposition.
Question No. 7
LSA-R.S. 39:1410.60 et seq. provides for the consent and approval of the State Bond Commission by any political subdivision prior to incurring debt. However, the question of incurring debt is not at issue at this time, only the question of moving the parish seat. Although it is inevitable that the issue of incurring debt will arise in the future if two-thirds of the electors voting in the election vote in favor of moving the parish seat, it is also possible that said issue will never arise if the people do not vote in favor thereof. Therefore, it is our opinion that the parish governing authority is not in violation of R.S. 39:1410.60 et seq. atthis time, as the matter at hand is not a question of incurring debt.
Question No. 8
We are unable to provide an opinion on this question, as same is hypothetical, and we have no way of knowing what options the parish governing authority may choose to take if the question of moving the parish seat is presented to the people and two-thirds vote in favor thereof.
We can refer you to the applicable laws, specifically LSA-R.S.33:4711 et seq., Chapter 13 of Title 33, which provides for the sale, exchange or lease of public property and buildings by municipalities. LSA-R.S. 33:4712.6 specifically provides for the sale, exchange, or lease of property by the City of Covington. Certainly, a parish governing authority has several options if such a situation were to arise, i.e. keep and lease the buildings, sell the buildings if no longer needed for a public purpose and even abandon the buildings.
Other questions
Last, but not least, you have verbally requested our interpretation of LSA-R.S. 33:4715, which provides:
 The police jury of each parish shall provide a good and sufficient courthouse, with rooms for jurors, and a good and sufficient jail, at such place as they may deem most convenient for the parish at large, provided that when the seat of justice is established by law, they shall not have power to remove it.
We opined in Attorney General Opinion No. 79-21 that "R.S.33:4715 prohibits the police jury from removing the parish seat, once it has been established by law." Further, we opined, "Finally, we note that Article VI, Section I(c) of the Constitution provides that the parish seat may be changed by a vote of 2/3 of the electors voting in an election for such a change." You have interpreted this 1979 opinion to mean that if a police jury establishes a seat of justice, then they are prohibited from moving same. We disagree.
It is well settled that the term law refers to legislation and not a local ordinance. We researched the Louisiana Revised Statutes and found no law establishing the seat of justice in St. Tammany Parish. Therefore, in amplification of Atty.Gen.Op. No. 79-21, we further opine that Constitutional Article VI, § 1(C) (1974) does not specifically preclude the legislature from establishing by law a parish seat of justice, as the legislature has the power to perform any act not prohibited by the Constitution; and the Constitution clearly grants the power to the people to determine whether to move a parish seat, whether established by law or not, as the Constitution supersedes state law.
We hope the foregoing is helpful to you, and if we can be of further assistance, please advise.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 _________________________________ ANGIE ROGERS LaPLACE Assistant Attorney General
RPI/ARL/pb
cc: St. Tammany Parish Police Jury
Date Received:
Date Released:
Angie Rogers LaPlace Assistant Attorney General