For the reasons assigned, the judgment appealed from is affirmed.

ST. PAUL, J., absent.

153 So. 825

## SOUTH PORT CORPORATION, Inc., v. P. OLIVIER & SONS, Inc.

### No. 32666.

Feb. 26, 1934.

Rehearing Denied March 26, 1934.

Clement M. Moss, of Lake Charles, for appellant.

Pujo, Bell & Hardin, of Lake Charles, for appellee.

BRUNOT, Justice.

This is a suit upon a contract for the purchase and sale of piling. The demand is for $2,102.85, the sum of the alleged loss suffered by the plaintiff because the defendant refused to accept and pay for certain piles. There was judgment for the plaintiff for $897.75, with 5 per cent. per annum interest thereon from November 13, 1932, until paid, and costs of the suit. From the judgment, the defendant appealed. The plaintiff has answered the appeal and prays that the judgment be amended by increasing the amount of the

award to the sum prayed for, and, as thus amended, that it be affirmed.

The contract upon which the suit is based is as follows:

"December 6th, 1930.

"To Mess. P. Olivier & Sons, Lake Charles, La.

"We confirm having sold you the following: Southern Pine Line Pile, Rough Peeled.

"Original quotation on shorter lengths to apply, 40'—or less.

"Approximately 2700 Pcs. 6" tip, 10" butt, 3 feet from butt @10-¾¢ per linear foot.

"About 25,000 Lin Feet, of 45 ft. lengths to be shipped out immediately.

"We to be advised as to other lengths 6 to 8 days prior to your needing them.

"Piles to be in accordance with plans and specifications of the East Jefferson Water Works, No. 1 Project, up to 45' in length.

"Any piles delivered by us to job to be .01¢ per linear foot additional in price.

"It is understood and agreed that we are to furnish all piles on this job with the exception of 20,000 linear feet already purchased by you elsewhere.

"Unless failure to deliver as set forth in shipment paragraph below.

"Shipment to be at the rate of 120 pieces or more per day beginning 12/12/30.

"All contracts conditioned upon delays and omissions due to strikes, fires and unavoidable accidents at our manufacturing and/or filling plants at Southport, Louisiana, and to causes beyond our control.

"Time of shipment beginning 12/12/30 as per above.

"Ship to P. Olivier & Sons
At Armours Switch, Shrewsbury, La.

Price fob cars Armours switch Shrewsbury, La. Terms cash less 2% 10 days after deducting Freight. Routing I. C. R. R.

"Kindly sign and return attached duplicate.
"Accepted
  "[Signed] P. Olivier & Sons, Inc.,
    "By [Signed] F. Miller, V. P.
  "Southport Corporation, Incorporated
    "[Signed] J. W. Wood."

The plaintiff alleges that prior to its receipt of written notice from the defendant, it had delivered, under the contract, 1,090 piles, for which it received payment; that it had made provision, and it should have been permitted, to deliver the entire 2,700 piles called for by the contract; that when defendant's written notice to cease deliveries was received, it had on hand 271 piles, the cost of which, plus its profit thereon, totals the sum of $897.75; and that the delivery of the remaining 1,339 piles would have netted plaintiff a profit of $1,205.10. The total of these sums is the sum sued for.

The defendant answered the suit, and, by way of reconvention, prayed for judgment, in reconvention, for $508.73. In its answer, the defendant admits the contract; it admits that the plaintiff began the delivery of piles on December 8, 1930; it admits that it received and paid for 1,090 piles; and it admits that it gave the plaintiff written notice on December 18 and 19, 1930, to cease the

delivery of piles, but it specially denies all other allegations of the petition, and, by way of reconvention, it alleges that plaintiff caused it to suffer the loss of 3,990 linear feet of piling at 11¾ cents per foot, by shipping 45-foot length piling after verbal notice to cease shipping piling. It was on these issues that the case was tried.

During the trial parole testimony was offered to explain the intention of the parties to the contract. The court assumed that the contract was a "firm order" for 2,700 piles, and for that reason it excluded the testimony, but after the case was submitted it was discovered that the contract called for an approximate number of piles, and a judgment was rendered ordering the case reopened for the reception of further evidence and appropriate orders and proceedings.

After the taking of further testimony, the case was again argued and submitted, and judgment was rendered in favor of the plaintiff and against the defendant for $1,701.51 with interest thereon at the rate of 5 per cent. per annum from November 13, 1931, and costs. On the trial of a motion for a rehearing it was ascertained that, through errors of calculation, the court had rendered judgment in favor of the plaintiff for a sum more than $800 in excess of the sum due it. Judgment was therefore rendered correcting these errors and reducing the award to the sum and interest stated in the first paragraph of this opinion.

█ With respect to the proper interpretation of the contract sued upon and the rights of the parties thereunder, the learned trial judge correctly says:

"The first essential is a correct understanding of the contract itself. It will be noticed that the piling to be furnished is to be in accordance with the plans and specifications of the water works project in which it was to be used. Engineer Henning says that the plans and specifications were in effect at the time of the execution of the contract between the plaintiff and defendant, but that shortly thereafter a complete revision of the piling plans was ordered, without modifying the specifications. Mr. Wood, representative of the plaintiff, says that the defendant ordered forty-five foot piling, with the proviso that the lengths might be changed on a portion; and that the plaintiff took chances on the change. He explains that test piling had been driven at the time the contract was written, and Mr. Miller wrote into the contract the provision 'original quotation on shorter lengths,' to protect the defendant on prices already quoted for shorter and cheaper lengths.

"Mr. Stone, Engineer employed by the defendant, explains that before December 6 test piling were driven and showed length of piling to be used in Division 7 as 45 feet, and that the piling plan for Division 8 was completed about December 29.

"Mr. Miller, of the defendant company, says that he signed the contract in view of the specifications, which provide that after the driving of test piling, the engineer would dictate the number and length of piling to be used, the plans as previously prepared and furnished to the contractor having been intended as an approximation only. The first definite order as to the number and lengths was given by the engineer on December 9,

three days after signing the contract with the plaintiff.

"All of this evidence has a bearing on the interpretation of the written contract, which the plaintiff claims to comprise a 'firm' order for material, and which the defendant insists was tentative, or elastic, as required by subsequent tests and demands of the engineers in charge of the project. * * *

"That the written contract was intended to be indefinite as to numbers and lengths is shown by the words 'approximately 2,700 pieces,' followed by the next sentence, 'About 2,500 lin feet of 45 ft. lengths to be shipped out immediately.' That the descriptions were left elastic in order that the material would conform to the specifications is shown by the agreement to 'furnish all piles used on this job,' except 20,000 feet purchased elsewhere.

"Thus far the intention of the parties seems fairly clear; but doubt arises when we read other provisions. Immediately following the agreement to deliver approximately 25,000 lineal feet of 45's, is the sentence, 'we to be advised as to other lengths 6 or 8 days prior to your needing them,' and near the close of the document is the obligation, 'Shipment to be at the rate of 120 pieces or more per day, beginning 12/12/30.'

"Construing all of these provisions together, it appears that the document means: A total of about 2,700 pieces were to be delivered; the lengths were to conform to specifications of the project, except that about 25,000 lineal feet of 45's was to be shipped out immediately; shipments were to continue, however, at not less than 120 pieces per day, provided that when shorter lengths were required, the plaintiff was to have 6 or 8 days notice before shipment.

"While it thus appears that both parties had in mind probable changes in requirements of the job for material, and agreed that the contract should be varied to meet those requirements, the manner in which it should be varied becomes the important consideration. It will be noticed first that there is no condition to the obligation to ship 120 pieces per day, beginning on December 12. Next it is seen that the immediate shipment consists of 45's, and that other lengths will be shipped only after 6 or 8 days notice. The question is whether the plaintiff, after shipping 'about 25,000 ft. of 45's' was required to stop and wait for orders for shorter lengths, or whether its agreement to ship no less than 120 pieces per day obligated it to continue shipping 45's until notified for 6 or 8 days to ship shorter pieces.

" 'About 25,000 ft. of 45's' is indefinite, but it could not have meant 49,000 feet, which were actually shipped. On the other hand, 'no less than 120 pieces per day' states an absolute minimum below which the plaintiff could not go, under pain of violation of its contract. It required and had a right to six or eight days' notice of orders for shorter lengths, doubtless for the reason that its own orders to the woodsmen could not be filled on less notice. Meanwhile, although the approximate number of 45's, as stated in the contract, was far exceeded, it had the right to assume in the absence of contrary notice, that the elastic terms of the contract were being stretched to comply with the needs of the work. Until otherwise notified, it was justified in assuming that the defendant would in-

sist upon the minimum of deliveries stated in the contract.

"While this minimum requirement appears to be a stipulation wholly in the interest of the defendant, and therefore, subject to waiver by it, the fact that orders to woodsmen were necessarily given some days in advance of deliveries on the works, alters this view of the provision; for the plaintiff was compelled to comply with the minimum requirement by advance orders to woodsmen. It was therefore in the position of being unable to stop shipments immediately without serious loss. So long as it had no notice of the requirement for shorter pieces, it was compelled to provide a supply of 45's available for six days delivery of not less than 120 pieces per day."

We think the judge has followed very closely the cardinal rule for the interpretation of contracts. He has considered the entire contract and the separate parts thereof independently, and with respect to each other, in arriving at the intent of the parties, and he has held them bound to the extent that their intention has been ascertained, because the law presumes that the parties understood the import of their contract and that they intend that which its terms manifest. In R. C. L. vol. 6, p. 837, we find the following:

"The intention of the parties is to be ascertained from the words employed, the connection in which they are used, and the subject matter in reference to which the parties are contracting. The subject-matter of the contract and the purpose of its execution are material to the ascertainment of the intention of the parties and the measuring of the terms they used, and when these are ascertaine[d] they must prevail over the dry words of the agreement."

The judgment appealed from contains no reference to the defendant's reconventional demand, but this omission is of no importance, for the quoted reasons of the trial judge show that he found the demand to be without merit, because the contract required the shipment of 120 piles per day, and that piles of a shorter length than 45 feet were to be delivered only after six or eight days' notice therefor. It is clearly shown that no such notice was ever given. On the contrary, the defendant received and paid for every piece of 45-foot length piling that was delivered. The defendant cannot recover for a loss suffered by reason of its own laches.

For the foregoing reasons, the judgment appealed from is affirmed at appellant's cost.

ST. PAUL, J., absent.