200 So.2d 877 (1967)
J. C. HEBERT, Jr.
v.
POLICE JURY OF WEST BATON ROUGE PARISH, State of Louisiana.
No. 7194.
Court of Appeal of Louisiana, First Circuit.
June 13, 1967.
Rehearing Denied June 15, 1967.
Writ Refused June 30, 1967.
*879 Joseph W. Cole, Jr., of Cole & Claiborne, Port Allen, for appellant.
Samuel C. Cashio, Maringouin, E. E. Huppenbauer, Jr., of Cox, Bagot & Huppenbauer, New Orleans, Fred G. Benton, *880 Sr., of Benton & Moseley, Baton Rouge, for appellee.
Before LANDRY, REID, SARTAIN, ELLIS and BAILES, JJ.
LANDRY, Judge.
This matter, and the associated case of Arnone v. Police Jury of Iberville Parish, State of Louisiana, La.App., 200 So.2d 897, involve suits by plaintiff taxpayer from each said parish to obtain preliminary and final injunctions prohibiting the respective police juries from carrying out the provisions of lease agreements entered into by defendants with certain industrial corporations and issuing certain revenue bonds pursuant to the provisions of LSA-R.S. 39:991-1001, inclusive, and Louisiana Constitution Article 14, Section 14 (b. 3), commonly known as the "industrial inducement law".
In each instance the validity of the lease and bonds was maintained by the trial court and the application for injunction denied. Both plaintiffs have appealed. We find the lower court has correctly resolved all issues presented for adjudication.
Although these related matters have not been consolidated, they were tried and argued as consolidated matters in both the trial court and on appeal. It is acknowledged by counsel in each case that for all practical purposes the issues are essentially legal as well as identical in both instances. Some slight factual variations are shown and will be noted hereinafter.
For purposes of brevity, the instant or Hebert case will sometimes hereinafter be referred to as the "Hebert case" or the "West Baton Rouge case" and the related suit referred to as the "Arnone case" or "Iberville case."
In each instance the defendant Police Jury has signed a lease designed to induce a large industrial firm to locate a multimillion dollar plant within its jurisdiction. In the Hebert case the Police Jury has entered into a lease dated September 22, 1966, with Copolymer Rubber & Chemical Corporation (Copolymer) for a term expiring November 1, 1986, subject to the option of Lessee (Copolymer) to terminate prior thereto. In connection with this lease the Police Jury proposes to issue $20,000,000.00 in revenue bonds as provided for in the applicable constitutional and statutory authority. In the Iberville case the lease is with Hercules, Incorporated (Hercules); its expiration date is February 1, 1987, and in connection therewith the Police Jury of Iberville Parish proposes to issue a total of $60,000,000.00 in revenue bonds. Further distinctions in the respective lease provisions are that in the Iberville case it is mandatory that the lessee purchase the leased premises at the termination of the lease and that rentals to be paid by the lessee are stated in fixed dollar amounts. In the West Baton Rouge lease, however, Copolymer possesses the option to purchase and failing to buy, subsequent rental is in effect fixed in the sum of the ad valorem taxes assessable against the subject property based on its value and the millage rate thereafter in effect.
Both police juries have duly adopted resolutions finding in effect that the granting of the leases and issuance of the necessary bonds pertain to the public interest and declaring that its parish and citizens would derive substantial economic benefits and advantages as a result of inducing the respective industries to locate within their boundaries. The resolutions further authorize the President and Secretary of the Police Juries to execute the leases on behalf of the governing authorities. By duly adopted resolution of each said body politic, elections were held in which the question of issuing the necessary bonds was submitted to the qualified taxpayers of each parish. In both instances the elections carried favorably in both numbers and assessed valuations as required by law. Moreover, in each case, The Board of Commerce and Industry has approved the respective lease agreements and the stated *881 plan of each governing authority to encourage the location of these industries within their territories pursuant to the pertinent constitutional and statutory authority.
The attack in each case is two-fold, that is, certain constitutional violations are urged and secondly, the lease itself is said to be null and void because certain of its terms contravene specific state laws.
As regards constitutionality, it is contended in essence (1) that the applicable constitutional article, namely, Article 14, Section 14 (b.3) was not properly adopted; (2) the bonds sought to be issued are not issued for public purposes as required by certain state constitutional provisions, and (3) if issued for the purposes contemplated (which plaintiffs maintain in effect are for the financing of private industry), they contravene certain provisions of both the state and federal constitutions.
In support of their constitutional arguments, plaintiffs maintain the statute and constitutional provision in question are not limited to the issuance of bonds for public purposes consequently, they may be said to permit the sale of bonds by public agencies for other than public purposes and are therefore null and void. It is further contended that in neither case has the police jury offered any evidence to substantiate the declared public purpose of the bonds other than in the form of the resolutions so declaring and the subsequent affirmation thereof by the Board of Commerce and Industry as hereinabove noted.
As regards the contentions the leases themselves are null and void because certain of their provisions violate express state law and jurisprudence, the argument in support thereof may be summarized as follows:
(a) Provisions in the leases obligating the parishes not to sell, assign or transfer the subject properties during the lease term, except under specific terms stated therein, violate the terms of LSA-R.S. 33:4711 and 4717, which place no limitation on the authority of a police jury to sell property belonging to the parish;
(b) Lease terms providing that if for any reason, after the bonds have been sold, Lessee fails to convey the industrial facility to Lessor prior to the date specified in the contract, on the transfer date, Lessor shall require the transfer of all moneys remaining in the project account to the bond fund and immediately sell all interest in the project to Lessee, are violative of Article Four, Section Twelve of the state constitution which prohibits the giving of anything of value belonging to the state or the loan or pledge thereof to or for any person or corporation, public or private;
(c) The obligation of the police jury to redeem the bonds prior to maturity at Lessee's option pursuant to certain conditions set forth, grants Lessee illegal and unauthorized control of public funds;
(d) A lease provision permitting release of and removal from the effect of the contract of a portion of the leased premises is in direct violation of the terms of LSA-R.S. 39:993 which expressly provides that upon execution of the Act of Mortgage and Pledge provided for therein, the property mortgaged shall remain mortgaged and pledged for the security of the bonds, in principal and interest, until they have been fully paid and discharged.
(e) Under certain conditions specified, principal and interest on bonds may be paid from bond proceeds. It is contended this rendered the lease null inasmuch as no such express authority is granted in either the statute or constitutional provision. Further, plaintiffs argue that this provision offends the terms of LSA-R.S. 39:-996, which states the rental provisions of the lease shall be sufficient to discharge both principal of and interest on the bonds issued to finance the industrial development.
*882 (f) The lease is in effect not a lease because it lacks the essential element of fixed price required by LSA-C.C. Article 2669. In this connection it is maintained that the prices are variable at the option of Lessee; consequently there is no price and hence no lease.
(g) The leases in question being granted without advertisement for bids do not comply with LSA-R.S. 41:1211-1221, inclusive, which require that leases on lands belonging to political subdivisions of the state shall be preceded by advertisement for bids thereon and no such advertisements were had in the cases at bar;
(h) Provisions requiring the parish to purchase the completed facility from the industry involved and immediately lease same to each lessee are violative of the terms of LSA-R.S. 38:2211-2217, inclusive, which require advertisement for bids of all public works exceeding a certain amount. In this regard, it is contended that the construction is for all intents and purposes undertaken by the Police Jury which provides the means of financing; therefore the public contracts law is applicable.
(i) Assuming the bonds are issued for public purposes, lease provisions granting Lessees the right to purchase the industrial facilities for the amount of the outstanding bonds plus an additional nominal sum are contrary to LSA-R.S. 33:4711, which provides that public property may be sold only when it is no longer needed for public use.
In this connection, it is argued that in each lease it is provided Lessee may purchase the facilities for the sum of $1,001.00 if all bonds have been retired. Plaintiffs maintain this constitutes a violation of the constitutional provision prohibiting the donation of publicly owned property and also Articles 2464 and 2589 of LSA-R.C.C., which require serious consideration as the price of a sale or transfer. Additionally, plaintiffs aver such provision vitiates the leases for lesion beyond moiety.
(j) In the case of the Parish of West Baton Rouge only, Lessee is given a renewal option at nominal rental which violates LSA-R.S. 33:4711 for the reasons stated in (i) above and also Article IV, Section 12 of the state constitution which forbids the grant or donation of public property to a private person or corporation.
(k) In effect the contention is repeated that the terms of the lease agreement and bond contract constitute an illegal pledge of public credit for private purposes in violation of Article 4, Section 12 of the state constitution. As we understand the argument, the point is made that inasmuch as the lease and bonds require the pledge of the revenues derived from the lease and the mortgage of subject properties, it effectuates a pledge of public funds for private purposes.
(l) The terms of the lease and bond indenture unlawfully delegate to a private corporate officer (the named trustee) certain discretionary powers exercisable only by the police jury. In this regard it appears that the named trustee, an officer of a private business corporation, in effect is authorized to receive and disburse bond proceeds as well as rentals; to call the bonds prior to maturity and cancel the mortgage provided the amount in escrow is sufficient to pay all outstanding bonds in principal and interest.
(m) With regard to the Parish of West Baton Rouge only, commencing ten years after the effective date of the lease and during the remainder of its primary term, additional rental is stipulated in the equivalent of the ad valorem taxes assessable against the facility pursuant to its valuation, as of said time, and the millage rate then in effect. It is contended first this is tantamount to the illegal taxing of publicly owned property considering the facility would then be owned by the parish. It is also argued that such provision is illegal inasmuch as neither the pertinent constitutional provision nor statute permit the collection of such additional rental.
*883 In support of his decision our brother of the trial court has filed of record reasons for judgment which reflect a most scholarly, painstaking and thorough consideration of all except one or two of the issues raised by plaintiff-appellant. In deference to and recognition of his effort in this matter, we adopt the major portion of his opinion as our own, supplementing same, as hereinafter indicated, to amplify where we deem further discourse necessary. We shall also answer those points on which the trial court apparently did not touch.
We quote from the opinion of the lower court as follows:
"The pertinent constitutional and statutory provisions involved in this suit are Article XIV, Section 14, Paragraph b. 3 of the Louisiana Constitution for the year 1921, and Sections 991 to 1001, inclusive, of Title 39 of the Louisiana Revised Statutes of 1950. By a constitutional amendment adopted on November 8, 1966, the provisions of R.S. 39:991 to 39:1001 were approved, ratified, and made part of the Louisiana constitution and given full effect as a constitutional amendment. Hereinafter in these reasons for judgment reference will be made to the aforesaid sections of the Revised Statutes and such references or designations will include said provisions as being both the constitutional and statutory enactments. The pertinent provisions of R.S. 39:991 to 39:1001, inclusive, are as follows:

Section 991. `In addition to any other authority conferred by the constitution and statutes of the State of Louisiana, any municipal corporation or any parish or any other political subdivision or taxing district authorized to issue bonds under Article XIV, Section 14, paragraph (b. 2), or Article XIV, Section 31, of the Constitution of the State of Louisiana for the year 1921, all of which are hereinafter in this Part referred to as "municipal corporation" or "municipality" may, in order to encourage the location of or addition to industrial enterprises therein or adjoining thereto, issue revenue bonds and use the funds derived from the sale of such bonds to acquire industrial plant sites and to acquire, purchase, construct or improve industrial plant buildings and necessary property and appurtenances thereto and may sell, lease or otherwise dispose of, by suitable and appropriate contract, to any enterprise locating or existing within or adjoining such municipality, a plant site, appurtenances and plant building, or buildings, either, both or severally. * * *'

Section 992. `Bonds issued under this Part shall be authorized by resolution of the governing body and shall be limited obligations of the municipality, the principal of and interest on which shall be payable solely from the income and revenue derived from the sale, lease or other disposition of the project or facility to finance which the bonds are issued hereunder, and/or from the income and revenue derived from the sale, lease or other disposition of any existing project or facility acquired, constructed or improved under the provisions of this Part or Article XIV, Section 14, paragraph (b. 2) of the Constitution of the State of Louisiana; provided, however, that in the discretion of the governing body said bonds may be additionally secured by a mortgage covering all or any part of the project from which the revenues so pledged may be derived. The bonds shall not constitute an indebtedness or pledge of the general credit of the municipal corporation within the meaning of any constitutional or statutory limitation of indebtedness and shall contain a recital to that effect. * * * They may be made redeemable at the option of the issuing municipality prior to maturity at the premium (not greater than ten per cent of the principal amount thereof) which the governing body determines. * *' *884 Section 993. `Any bonds issued under the authority of this Part shall be payable from and secured by a pledge of the revenues hereinabove described and may be secured by a mortgage covering all or any part of the project or facility from which the revenues so pledged may be derived. Upon approval of the issuance of the bonds at an election as herein provided, the governing authority may, by resolution, empower the presiding officer and secretary or clerk to issue, execute, sign, seal, negotiate, and deliver the bonds and to make and execute in the name and under the seal of the municipality an act of mortgage and pledge to secure the payment of the bonds in principal and interest, in accordance with the resolution ordering the election, and when the act of mortgage and pledge has been executed, the property thus mortgaged and the income and revenues therefrom thus pledged, shall remain mortgaged and pledged for the security of the bonds, in principal and interest, until they have been fully paid and discharged; or, in the alternative, the governing authority of the municipality or district may deposit with the trustee, as provided in the act of mortgage, cash or United States government bonds in a sufficient amount to fully pay the then outstanding bonds and interest thereon, and, upon such deposit being made, the trustee may cancel the mortgage. * * But, bonds issued under the provisions of this Part and the liability arising therefrom shall not be a charge upon the other income and revenues of the municipality issuing the bonds, and shall not be included in computing the indebtedness of the municipality for the purpose of determining any constitutional or statutory limitation.'

Section 996. `Prior to the issuance of any bonds under this Part, the municipality shall lease the project to a lessee under an agreement conditioned upon completion of the project and providing for payment to the municipality of such rentals as will be sufficient (a) to pay the principal of and interest on the bonds issued to finance the project, (b) build up and maintain any reserve deemed by the governing body to be advisable in connection therewith, and (c) unless the contract of lease obligates the lessee to pay for the maintenance and insurance of the project, to pay the cost of maintaining the project in good repair and keeping it properly insured. Such lease shall be made upon such other terms and conditions and for the time which may be determined by the municipality and may contain provisions authorizing the purchase of the entire leased project or any portion thereof by the lessee or its assignee after all bonds issued thereunder have been paid in full, for such consideration and upon such terms and conditions as the municipality may determine.'

Section 997. `Before the resolution authorizing the issuance of bonds under this Part is adopted by the governing body, the question of the issuance of the bonds shall be submitted to and approved by votes of a majority in number and amount of the property taxpayers who vote at an election held hereunder. The proposition may be submitted at either a special or general election and all matters pertaining thereto, including the qualifications of voters and the manner of calling and conducting the election and canvassing and promulgating the results thereof, shall be governed by the provisions of Chapter 4, Sub-title 2, Title 39, of the Louisiana Revised Statutes of 1950; provided, that before calling an election to vote on incurring debt and issuing bonds to carry out any plan to encourage the location of or additions to an industrial enterprise, the State Bond and Tax Board and Board of Commerce and Industry or their successors in function, shall certify their approval of any proposed contract between the municipality and the industrial enterprise to be aided, encouraged or benefited.' *885 Section 1001. `This Part shall constitute full authority for the accomplishment of all acts herein authorized to be done. No other law restricting the carrying out of the acts authorized to be done shall be construed as applying to any proceedings had or acts done pursuant to this Part.'
As indicated hereinabove, the facts of the case are uncontested and are fully set forth in the evidence introduced by the plaintiff and the defendant at the trial of this proceeding. It appears that on September 14, 1966, the Police Jury of the Parish of West Baton Rouge adopted a resolution making certain findings and determinations that pertained to the public interest of the Parish and declared that the Parish and its citizens would derive substantial economic advantage as a result of the inducement, encouragement and location of a manufacturing facility contemplated to be located in the Parish of West Baton Rouge by Copolymer Rubber & Chemical Corporation. Said resolution further authorized the President and Secretary of the Police Jury to execute a lease agreement with Copolymer Rubber & Chemical Corporation and pursuant to said authority, a lease agreement was signed on September 22, 1966. On January 16, 1967, an amendment to said lease agreement was executed by and between the Police Jury and the Company in which amendment one section of the lease agreement was amended so as to provide for additional rental payments by separate contract between the parties thereto or other parties. On February 8, 1967, the Police Jury, Copolymer Rubber & Chemical Corporation, the Sheriff and Ex-Officio Tax Collector of the Parish of West Baton Rouge, the Assessor of West Baton Rouge Parish and the Parish School Board of said Parish entered into an agreement whereby said Company agreed that in addition to the rent provided for in said lease agreement, it would pay to the Sheriff on or prior to December 31st of each calendar year, and until the expiration of the primary term of said lease agreement, a sum equal to what the ad valorem taxes would be on the industrial facilities described in said lease agreement as if said facilities were placed on the tax rolls of the Parish.
On January 16, 1967, the Police Jury adopted a resolution ordering and calling a special election in the Parish of West Baton Rouge to authorize the issuance of bonds in accordance with the aforesaid lease agreement, which election was held on March 7, 1967 and at which election was submitted to the resident property taxpayers of the Parish a proposition authorizing the issuance of $20,000,000 of revenue bonds of the Parish pursuant to the authorization of Article XIV, Section 14, Paragraph b. 3 of the Louisiana Constitution and R.S. 39:991 to 39:1001, inclusive. The proposition submitted at the election was carried by a majority both in number and amount of the voters and assessments, and on March 8, 1967, the Police Jury of the Parish officially promulgated the returns of said election.
In said lease agreement the Parish has agreed to issue an initial $10,000,000 of revenue bonds and the costs of the land and initial plant facility will require said sum and will provide about 90 jobs for residents of the area. The Parish now contemplates issuing said bonds for the purpose of obtaining funds for the purchase from Copolymer Rubber & Chemical Corporation of the industrial facility more fully described in the lease agreement. This injunction proceeding was brought to enjoin and prohibit the Police Jury from issuing said bonds and from carrying out the provisions of the aforesaid lease agreement.
The petition presents a number of legal and constitutional questions that for the purpose of this decision can best be summarized as follows:
FIRST, that Article XIV, Section 14, Paragraph b. 3 amending the Louisiana Constitution was not properly adopted as required under the Constitution and laws *886 of the State and the rules and regulations governing the enactment of constitutional amendments. As to this, plaintiff offered no proof in support of this contention, and in the absence of such proof the legal presumption must be that the adoption of the amendment was properly carried out.
SECOND, that the provisions of Article XIV, Section 14, Paragraph b. 3 of the Louisiana Constitution and Sections 991 and 1001, inclusive, of Title 39 of the Louisiana Revised Statutes of 1950, serving as the basis for the project, contain no provisions limiting the projects authorized to public purposes, and violate the Fifth and Fourteenth Amendments to the Constitution of the United States providing that no state shall `deprive any person of life, liberty or property without due process of law', and further and in relationship thereto, no public purpose or advantage is shown under the facts of this case, in that Copolymer was not induced or encouraged to locate the plant, or to make `any additions to any existing industrial enterprise therein or adjoining thereto', as is required in R.S. 39:991, and that no economic advantage or impact has or will result therefrom, all in violation of the due process clause of the Louisiana Constitution of 1921, Article I, Sections 1 and 2, and of Article XIV, Section 14, Paragraph b. 3 of the Louisiana Constitution, and Sections 991 to 1001, inclusive, of Title 39 of the Louisiana Revised Statutes of 1950, and of the Federal constitutional amendments, Five and Fourteen.
THIRD, that the lease agreement was not awarded in accordance with the purposes of the Public Lease Law (R.S. 41:1211 to 41:1221, inclusive), and that the provisions thereof providing for the acquisition of land and the facility is likewise in violation of the Public Contract Law of this State (R.S. 38:2211 to 38:2217, inclusive).
FOURTH, that the provisions of the lease investing in the Company the right to become the owner of the properties under certain conditions either during or after the termination of the lease represent a proposed sale of these facilities by the Parish without serious consideration and are in violation of the articles of the Louisiana Civil Code dealing with serious consideration and lesion beyond moiety, as well as Article IV, Section 12 of the Louisiana Constitution prohibiting the donation of public property to a private corporation.
FIFTH, that the supplemental agreement as to the payment of additional rental equivalent to a full ad valorem assessment to the Police Jury and the other political subdivisions is not sanctioned by the Constitution and laws of this State.
SIXTH, that the bonds cannot be legally issued because the lease agreement executed between the parties contains provisions which are not authorized by Louisiana law, and without which the lease agreement would not have been entered into, and the bonds would not have been marketable.
These points will be disposed of in the order stated.
The issue of public purpose and the related issues of industrial inducement and economic impact as well as State and Federal constitutional questions arising under Article I, Section 2 of the State Constitution, and Amendments Five and Fourteen of the Federal Constitution have already been passed upon in two decisions of the Supreme Court of this State, Miller v. Police Jury of Washington Parish, 226 La. 8, 74 So.2d 394, and LeBlanc v. Police Jury of the Parish of Rapides, [La.App.] 188 So.2d 131, writs denied, 249 La. 618, 188 So.2d 607. In the Miller case, supra, Article XIV, Section 14, Paragraph b. 2 of the Constitution was involved. This Article was the initial industrial inducement law of the State. Thereunder, an unlimited property tax was allowed and was voted. Article XIV, Section 14, Paragraph b. 3 is a companion or kindred law allowing utilization of public credit for industrial development purposes in certain cases, restricted only to the issuance of revenue bonds, as is spelled out in the constitutional *887 provision and in greater detail in R.S. 39:-991 to 39:1001, inclusive. In the LeBlanc case, supra, the provisions of R.S. 51:1151 to 51:1165, inclusive, are involved. These statutory provisions are also restricted to the issuance of revenue bonds for similar purposes through an industrial development board appointed by either a police jury or a municipality, rather than by direct action of these appointing authorities, as is anticipated under the first two laws. The kindred nature of all of these laws established by a simple reading is rather succinctly shown by an actual comparison of the provisions of R.S. 51:1151 et seq. with the provisions of R.S. 39:991 et seq., here involved.
The purpose of the lawmakers was and is to induce and stimulate industrial expansion in Louisiana, which is still insofar as the national picture is concerned to be classified primarily as an agricultural state, with gross imbalance in the economy in this respect, despite the great growth that has been occurring in recent years. As to public good or public purpose, it cannot be denied that this growth pattern has been stimulated by this cooperative state action, and that the continued growth pattern as well as the essential increasing prosperity of this State and of the general welfare of the people will depend to a considerable degree upon a healthy growing industrial complex, diversified in character, housed in modern up-to-date facilities, and geared to the technological advances of our time. The fact that these laws do not make any express reference to a public purpose cannot defeat the plain intention of the Legislature to stimulate industrial development to give the economy of Louisiana a sound balance, and both from the standpoint of essential industrial inducement, as is expressly provided for by these laws, as well as from the standpoint of economic advantages, such public purpose is plainly implied. Actually and as the Courts of this as well as other states have held, in cases of this kind, there is a public purpose. Miller v. Police Jury of Washington Parish, supra; LeBlanc v. Police Jury of the Parish of Rapides, supra; State v. Smith [Smith v. State], 222 Ga. 552, 150 S.E.2d 868 (1966); Roan v. Connecticut Industrial Building Commission [150 Conn. 333], 189 A.2d 399 (Conn. 1963); Green v. City of Mt. Pleasant, 131 N.W.2d 5 (Iowa 1964); Fairfax County Industrial Development Authority v. Coyner, 207 Va. 351, 150 S.E.2d 87 (Va. 1966).
All of these laws are in `pari materia' and have been read and interpreted by the courts in many of the states of the Union, and particularly in the South, as was pointed out in the two Louisiana cases in question. We quote from the LeBlanc case, which is the more recent, the following:
`The provisions contained in the statute anticipate the same purposes and generally are similar to the other laws of Louisiana governing industrial development under the State's industrial inducement plan, such as Article 14, Section 14 (b. 2) of the Constitution, which anticipate cooperation between the public authority and a sound private interest for the acquisition of sites and the construction of essential industrial improvements to be leased and/or sold to the private industry under terms to be worked out with this industry by negotiation so as to insure the full payment of the principal and interest of the indebtedness incurred by the public corporation, as well as the payment of all other operation and maintenance costs and expenses.'
Upon this question of public purpose and the related issues, the evidence in this case shows that the Police Jury expended much effort and time to induce and encourage the location of industrial enterprises in the Parish, beneficial to the public interest and to the Parish and its citizens, and insofar as Copolymer Rubber & Chemical Corporation is concerned, and as is shown in the resolution approving the lease agreement and authorizing its due execution, gave detailed consideration and study to the proposal whereby the Company would *888 establish and operate a new manufacturing facility in the Parish, and found in this resolution that the Company would be induced to locate there if this cooperation were extended, and that the facility would benefit the economic development of the Parish, and that it was in the public interest of the Parish to encourage the location of such an enterprise there. These findings were approved by the Board of Commerce and Industry, as is required under the provisions of the amendment. Furthermore, the lease agreement was not only executed pursuant to approval by the Board of Commerce and Industry and by the State Bond and Tax Board, but also with the approval of the qualified taxpaying voters of the Parish. All of the sanctions and approvals set out in the Miller case are likewise present in this case. These two decisions of the Supreme Court (Miller and LeBlanc cases, supra) are governing here, particularly as to the State and Federal constitutional questions. In the Miller case, the Court considered the Mississippi case of Albritton v. City of Winona, 181 Miss. 75, 178 So. 799, [115 A.L.R. 1436] in which the Supreme Court of the United States denied writs of review. The Louisiana Supreme Court in that case made a point of the fact that in the Albritton case a statute only was involved; whereas, in the Miller case Article XIV, Section 14, Paragraph b. 2 of the Constitution was involved. We quote in part from the Court's opinion:
`A Mississippi statute containing provisions similar to the constitutional amendment involved herein was contested on the ground that it violated the due process law and was held by the Supreme Court of Mississippi not to be violative of the due process law. Albritton v. City of Winona, 181 Miss. 75, 178 So. 799, 115 A.L.R. 1436. This case was appealed to the United States Supreme Court and the appeal was dismissed for want of a substantial Federal question citing: Jones v. City of Portland, 245 U.S. 217, 38 S.Ct. 112, 62 L.Ed. 252, * *
`In the Albritton case a statute was involved but here we have a constitutional amendment. While we realize that there are cases in the jurisprudence of the Supreme Court of the United States that appear to hold a contrary view yet it would appear that the findings of the state court as to whether or not public interest is involved is accepted unless clearly unfounded. * * *'
The Court went on to make the following observations:
`As far back as the year 1920 it was pointed out in Green v. Frazier, supra, (253 U.S. 233, 40 S.Ct. [499] 502 [64 L. Ed. 878]) that the peculiar conditions existing in a state, which are emphasized in an opinion of its highest court, if the state sees fit to enter upon enterprises with the sanction of its constitution, its legislature and its people, that the Supreme Court of the United States were not prepared to say that it was within their authority, in enforcing the observance of the fourteenth amendment to set aside such action by judicial decision and it was further pointed out that "In many instances states and municipalities have in late years seen fit to enter upon projects to promote the public welfare which, in the past have been considered entirely within the domain of private enterprise." As pointed out in the Albritton case (Albritton v. City of Winona, supra), there is a growing appreciation of public needs and a necessity of finding ground for a rational compromise between individual rights and public welfare. Reference was made therein to the words of John Marshall that a Constitution is:
"`* * * intended to endure for ages to come, and, consequently, to be adapted to the various crises of human affairs. To have prescribed the means by which government should, in all future time, execute its powers, would have been to change, entirely, the character of the instrument, and give it the properties of *889 a legal code. It would have been an unwise attempt to provide, by immutable rules, for exigencies which, if foreseen at all, must have been seen dimly, and which can be best provided for as they occur.' McCulloch v. (State of) Maryland, 4 Wheat. 316, 415, 4 L.Ed. 579." (181 Miss. 75, 178 So. 806.)'
In very emphatic terms the Court concluded:
"The enterprise involved herein is sanctioned by the Constitution, the Legislature, the Police Jury, the governing authority of the Parish, and the people. The findings of the Police Jury are supported by all the evidence in this case and there is no evidence to the contrary in the record. The title to the property is to remain in the public. The primary purpose of the enterprise is to relieve an economic condition affecting the welfare of the people of the entire Parish. The leasing of the property is only incidental to the purpose sought to be gained. The enterprise is unquestionably fraught with public interest. The public interest is more apparent in this case than in the case of Albritton v. City of Winona, supra.'
It is manifest that while the Court there was considering a constitutional authorization as is the case here, the Court was likewise taking into account specifically the City of Winona case, where only a statute was involved, as was true in the LeBlanc case, supra. The latter decision was by the Court of Appeal for the Third Circuit. The case involved only questions of law, and was raised to the level of a Supreme Court decision by a per curiam decree of that Court, of date June 23, 1966, in which writs to review were refused, but with the observation that the Court had considered the judgment of the Court of Appeal and had concluded that the judgment of that Court was correct. (See 188 So.2d 607) Thus, the LeBlanc case is also an authority here, and in that case all of the constitutional inhibitions which have been raised in this case were denied.
We quote from that decision the following:
`While the principal contention is that the statute attacked and the Development Board's industrial development plan violates Article 4, Section 12, there are also contentions that the due process provisions of the federal and state constitutions are violated (Article 1, Section 2, Louisiana Constitution; Fifth and Fourteenth Amendments, United States Constitution), and that the Development Board's issuance of bonds and incurment of debt is in violation of taxing and debt restrictions applicable to parochial and municipal corporations (Art. 10, Section 5, and Art. 14, Sections 14(f) and 14 (b. 2).'
The Court then reviewed the facts shown in the petition involving a plan of financing similar as to basic principles to the present plan. We quote further from that decision the following:
`The said statute is alleged to be unconstitutional and void upon the grounds that a private rather than a public purpose is involved, contrary to the provisions of Section 5 of Article 10, Section 12 of Article 4, and the due process clause of Section 2 of Article 1 of the Louisiana Constitution and the Fifth and Fourteenth Amendments of the Constitution of the United States; that the performance of the acts contemplated by said statute will violate Section 12 of Article 4 of the Louisiana Constitution in that the lease to be executed thereunder and the bonds to be issued by said Development Board pursuant thereto will result in the loaning, pledging or granting of public funds, credit, property and things of value to or for a person or persons and to or for a person or a corporation public or private; in that such acts will constitute the assumption by a political corporation of the liabilities of a corporation or association, and in *890 that such acts will constitute the carrying on by a public subdivision or corporation of the state of the business of a private corporation or the becoming of a part owner therein; that the issuance of the bonds contemplated by said statute will cause to be violated the provisions of subsection (f) of Section 14 of Article 14 of the Louisiana Constitution that no parish shall incur any debt and issue bonds therefor which shall cause the bonded indebtedness of such parish to exceed in the aggregate ten per centum of the assessed valuation of the taxable property thereof for any one purpose, and sub-section (b. 2) of said Section 14 of Article 14 that no parish may issue bonds in excess of twenty per centum of the assessed valuation of taxable property thereof for the purpose of acquiring or constructing industrial plant buildings and acquiring industrial plant sites and other necessary property and appurtenances, as to which the bonds here proposed will cause both limitations to be exceeded, and in that said Industrial Development Board is merely the alter ego of the parish for the purpose of the issuance of such bond and is subject to said limitations; and, further, that said statute violates Section 2 of Article 4 of the Constitution in that it purports by legislative action to create a debt or liability against the State, and to issue bonds related thereto without constitutional sanction.'
Thus, the Court there not only included the constitutional questions here presented but went beyond the questions here presented. The court in a rather lengthy opinion quoting and citing from a number of Louisiana decisions, including the Miller case, supra, as well as the Albritton case, supra, and Green v. Frazier, 253 U.S. 233, 40 S.Ct. 499, 64 L.Ed. 878, and many others, held that the incurring of debt and the issuance of bonds for the acquisition and development of industrial sites as provided in these laws do serve an essential public purpose, and is not violative of any of the State and Federal constitutional provisions relied upon by the plaintiff in this case.
The suggestion here that the proposed financing includes such pledges and committals as to constitute a loan of the public credit for a private purpose is not only unsound under the foregoing authorities, but is unsound in view of the precise language of R.S. 39:992 and 39:993 as well as under the provisions of the lease where it is shown that the debt incurred does not constitute a pledge of the general credit of the issuing authority within the meaning of any constitutional or statutory limitation of indebtedness, and that such bonds shall not be included in computing the indebtedness of such issuing authority for the purpose of determining any constitutional or statutory limitation. This language is unequivocal and cannot be construed as extending the public credit of the Parish to guarantee in any way the payment of the bonds involved. This distinction is well established in the Louisiana jurisprudence in the cases cited.
In other states where the issue has been raised the courts have sustained the validity of industrial revenue bond legislation, and in some instances have taken the view that the lending of the credit of the issuing authority presupposes the incurring of an indebtedness, or at least some sort of suretyship arrangement creating a contingent liability which might ultimately result in a burden upon the taxpayer. Under these authorities, in the absence of such direct or contingent liability, as is true here both under the law and the provisions of the lease, there is no lending or public credit. Pinsky, State Constitutional Limitations on Public Industrial Financing: An Historical and Economic Approach, 111 U.Pa.L.Rev. 265, 316-17 (1963). See also State ex rel. Saxbe v. Brand, 176 Ohio St. 44, 197 N.E.2d 328, 332 (1964); Newberry v. City of Andalusia, 257 Ala. 49, 57 So.2d 629 (1952); Green v. City of Mt. Pleasant, supra; Wayland v. Snapp, 232 Ark. 57, 335 S.W.2d 633 (1960); State ex rel. Ferguson v. *891 City of Pittsburg, 188 Kan. 612, 364 P.2d 71 (1961); Norvell v. City of Danville, 355 S.W.2d 689 (Ky.1962); Gregory v. City of Lewisport, 369 S.W.2d 133 (Ky. 1963); Massey v. City of Franklin, 384 S.W.2d 505 (Ky.1964); City of Gaylord v. Beckett, 378 Mich. 273, 144 N.W.2d 460 (1966); Port Authority of City of Saint Paul v. Fisher [275 Minn. 157], 145 N.W.2d 560 (Minn.1966); Gripentrog v. City of Wahpeton, 126 N.W.2d 230 (N.D.1964); Darnell v. County of Montgomery, 202 Tenn. 560, 308 S.W.2d 373 (1957); West v. Industrial Development Board of City of Nashville, 206 Tenn. 154, 332 S.W.2d 201 (1960); Fairfax County Industrial Development Authority v. Coyner, supra; State ex rel. [County Court of] Mineral County v. Bane, 148 W.Va. 392, 135 S.E.2d 349 (1964).
The plaintiff here has made certain specific allegations that the facilities were already being constructed by the Company on the date of the execution of the lease agreement, and that the Company would have located in the Parish whether the plan is approved or not; and further, that the economic impact upon the Parish would be negligible. The plaintiff has offered no proof whatever to contradict the findings of both the Police Jury and the State Boards in respect to these issues. The findings of the Police Jury and the approval of the Board of Commerce and Industry are conclusive and in the absence of fraud or abuse of discretion, neither of which are supported by the allegations of the petition and the evidence in this case, this court is without authority to find to the contrary. See State [ex rel. Magnolia Park, Inc.] v. Louisiana State Racing Commission, 231 La. 720, 92 So.2d 699 (1957); Lewing v. DeSoto Parish School Board, 238 La. 43, 113 So.2d 462 (1959); Stroy v. Heard [La. App.], 85 So.2d 275; State [ex rel. Carter] v. Louisiana State Board of Dentistry [La. App.], 90 So.2d 899; Loughridge v. Parish of Iberia, 180 La. 875, 158 So. 3; Ray v. Parish of Rapides, 169 La. 691, 125 So. 856; Goldberg v. Banta Bros., 183 La. 10, 162 So. 786.
The third point as to the alleged violation of the Public Lease Law (R.S. 41:1211 to 41:1221, inclusive) and the alleged violation of the Public Contract Law (R.S. 38:2211 to 38:2217, inclusive) are likewise without merit. Recent decisions of our courts have clearly held that the provisions of the Public Lease Law are not applicable to lease agreements entered into by public bodies pursuant to express constitutional or statutory provisions. Kliebert v. South Louisiana Port Commission [La. App.], 182 So.2d 814 (1966); Wright v. Lake Charles Harbor and Terminal Dist. [La.App.], 188 So.2d 449 (1966). See also LeBlanc v. Police Jury of the Parish of Rapides, supra. This court is well aware of the provisions of the Public Contract Law of this state but the express provisions of R.S. 39:991 clearly provide that the issuing authority may `issue revenue bonds and use the funds derived from the sale of such bonds to acquire industrial plant sites and to acquire, purchase, construct or improve industrial plant buildings and necessary property and appurtenances thereto * * *'. The lease in the instant case complies literally with this language in that the Police Jury is obligated to acquire a completed plant facility, including land, buildings and appurtenances, and thereafter proposes to lease it to the Company to accomplish the purposes intended. The Public Contract Law cannot be applied to such a situation and in particular where in many instances complex industrial facilities must be constructed by manufacturers which own or have access to certain trade secrets, patents and other processes that are unavailable to general contractors. The criteria in the lease agreement establishing the purchase price for the facility fully protects the Police Jury as if public bidding were required.
The fourth contention is as to lack of a serious consideration and lesion beyond *892 moiety as provided in Article 2464 and Article 2589 of the Civil Code. The lease here contains provisions and gives to the Company the option to purchase the facility for an additional nominal sum either during the term of the lease or at the termination thereof, after making all payments to fully retire the bonds and after fulfilling all of the other requirements and obligations of the lease. Other obligations of the Company under the lease include the payment of all taxes and other government and utility charges, where such items may be due under the Constitution and laws of the State, the payment of all premiums required in connection with essential insurance coverage, and all maintenance and operation costs, including the absorption by the Company of all depreciation costs and essential restoration and replacement, solely at the expense of the Company where such is required, whether as to the buildings or the installations contained therein to insure the continuance of a sound operation, and without any diminution whatever as to any of the Company's other obligations in the agreement.
Plainly the present is not just an ordinary lease with an option to buy, but rather is more in the nature of a leasepurchase arrangement where the serious consideration is the fulfilling and acquittal of all of said lease obligations. There is no question but that under the repeated decisions of the Louisiana courts it is necessary that there be a serious consideration to support a valid contract of the kind here involved, in accordance with the codal provisions, and this ruling has been held to apply to a lease with an option to buy. Long v. Sun Company, 132 La. 601, 61 So. 684; Hirsch v. Rosenberg [La.App.], 14 So.2d 331; Haas v. Cerami, 201 La. 612, 10 So.2d 61. However, again this court must look to the express constitutional and statutory provisions which are found in R.S. 39:996, namely, that the `lease shall be made upon such other terms and conditions and for the time which may be determined by the municipality (Police Jury in the instant case) and may contain provisions authorizing the purchase of the entire leased project or any portion thereof by the lessee or its assignee after all bonds issued thereunder have been paid in full, for such consideration and upon such terms and conditions as the municipality may determine' (Emphasis added). This constitutional grant of authority to the Police Jury is greater than the scope of the foregoing codal articles and to hold otherwise would subvert the constitutional mandate by applying inferior statutory law. See Hotard v. City of New Orleans, 213 La. 843, 35 So.2d 752; Kliebert v. South Louisiana Port Commission, supra. In the case of State v. Duhe, 201 La. 192, 9 So.2d 517, the application of lesion beyond moiety to the state was considered by the Louisiana Supreme Court. There the Attorney General brought an action on behalf of the State of Louisiana to set aside a sale made by the General Manager of the State Penitentiary under a specific act of the Legislature. One of the grounds upon which the validity of the transfer was assailed was that the act of sale was void ab initio for lesion beyond moiety. In response to this contention, the Court stated:
`Since, in the case at bar, the Attorney General does not question the constitutionality of Act No. 279 of 1926 and since he concedes that the act of the agent of the state was not tainted with fraud or that he abused the discretion or authority reposed in him by the Legislature, it seems plain that judicial interference would be unwarranted under such circumstances. The Legislature, where unrestrained by constitutional prohibition, has plenary power to convey the property of the State on such terms and conditions as in its wisdom it sees fit to impose and the remedies provided by the Civil Code for the rescission of sales on account of lesion beyond moiety (See Article 2589 et seq.) are inapplicable to such conveyances which are made under authority of an admittedly valid statute.'
*893 But this court must necessarily look to the lease agreement to determine whether a gratuitous conveyance is involved and whether the consideration for the options is actually serious. It seems clear that these codal principles do not apply here for the manifest reason that the price to be paid by the industry is not only a serious consideration, but that indeed it will represent a sum equivalent to full market value, or even in excess thereof, when the replacement obligations are considered. In evaluating the adequacy of a consideration, the whole purpose of the agreement is to be taken into account and here, beyond question the real consideration to the Parish is the inducement of the Company to locate an expanding facility in West Baton Rouge, with the multiple economic and other advantages that will develop therefrom; by providing employment directly and indirectly; by producing additional tax revenues for the Parish, and the other governmental agencies; by attracting satellite and kindred industries to the Parish; and by stimulating many collateral benefits to present residents of the Parish who are engaged in the business of providing supplies and services. These items are not fixed in a monetary sum in this agreement, but they are nevertheless substantial and serious. Furthermore, leases containing renewal and purchase options substantially similar to the provisions contained in the lease agreement herein involved have been upheld in every jurisdiction where the question has been expressly considered, and have been implicitly upheld in a number of cases where the question was not expressly raised or considered. See Newberry v. City of Andalusia, 257 Ala. 49, 57 So.2d 629 (1952); State ex rel. County Court of Mineral County v. Baue [Bane], 148 W.Va. 392, 135 S.E.2d 349 (1964); Bennett v. City of Mayfield [Ky.], 323 S.W.2d 573; Darnell v. County of Montgomery, 202 Tenn. 560, 308 S.W.2d 373; Green v. City of Mt. Pleasant, 256 Iowa 1184, 131 N.W.2d 5 (1964).
Under item 5 above, the suggestion is also made in plaintiff's petition that the supplemental agreement as to the payment of additional rental, equivalent to a full ad valorem assessment to the Police Jury and the other political subdivisions, is not sanctioned by the Constitution and laws of the State. These payments as provided in Section 5.36 of the lease agreement, and by the subordinate agreement, are no more than the unconditional commitments on the part of the Company to pay additional rentals of a nature which not only represent a permissible additional consideration for the lease, insofar as the Company and the Police Jury are concerned, but are plainly in the public interest. The public policy of the Louisiana Legislature in respect to and favoring such additional rental payments is shown in other provisions of the industrial revenue law of Louisiana, particularly as to similar action taken by industrial boards under R.S. 51:1151 et seq., as embodied in an amendment to these laws contained in Act No. 21 of 1966 Ex. Sess., now embodied in R.S. 51:1160. See also R.S. 17:100 which specifically authorizes payment by Police Juries to School Boards. Furthermore, the constitutional provision which authorizes this type of revenue bond financing deals with problems which are significant aberrations from those normally confronting political subdivision. We know of no constitutional or statutory provision in the law of this State, nor has any been suggested that would restrict the right of the Police Jury, acting here in the capacity of a lessor, from exacting any such beneficial requirement as an additional consideration for the agreement, or which would prohibit the Company from obligating itself from fulfilling it in accordance with the supplemental agreement.
As to item 6, a number of points are made in the petition that the bonds cannot be legally issued because the lease agreement executed between the parties contains provisions which are not authorized by Louisiana law, and without which the lease *894 agreement would not have been entered into, and the bonds would not have been marketable. Several of the provisions which plaintiff alleges are in violation of Louisiana law are the restrictions on the sale of the facility by the Parish; the obligation of the lessee to purchase the interest of the Parish, in part from bond proceeds, if the project is not completed and delivered to the Parish when contemplated; the requirement of the Parish to redeem bonds prior to maturity under certain conditions; and the release of land from the lease.
As to these contentions, it is axiomatic that in a case like the present where full power is vested in the public authority to enter into such a lease agreement, as is here involved, that the parties may contract as they please, and are to be held to the terms of the contract as written provided the cause of the contract is lawful and is not contrary to public policy and is not forbidden by law, moral conduct or public order. Arts. 1894, 1901, La. Civil Code; American Cotton [Co-op] Association v. New Orleans Packet Co., Inc., 180 La. 836, 157 So. 733; South Port Corporation v. P. Olivier & Sons, 179 La. 233, 153 So. 825. In the recent case of Kliebert v. South Louisiana Port Commission, 182 So.2d 814 (1966) the Court considered an attack upon a lease agreement executed pursuant to specific constitutional authority and held that the constitutional grant of authority to the commission in that case was greater than the scope of the statutory authority relied upon by plaintiff in challenging certain provisions of the lease agreement. In upholding the validity of bonds issued pursuant to such a lease agreement, the court said:
`But the Constitutional grant of authority to the Commission is greater than the scope of the statute * * * the Commission is empowered to construct and acquire structures useful for commerce in its area. It would be an unwarranted restriction on the operation of the Commission to require it to submit an intricate agreement of the type proposed here to the rigors of the competitive bidding statute. It must be concluded that the power granted to the Commission necessarily carried with it the implied authority to negotiate contracts consistent with its purpose. To hold otherwise would subvert the Constitutional mandate by applying inferior statutory law.'
See also Hotard v. City of New Orleans, supra. Furthermore, the provisions of R.S. 39:996 and 39:1001 give to the Police Jury the widest discretion in determining the terms of a contract most favorable to encourage and induce the location of industry within its territory.
The further suggestion is made that the agreement, designated `Lease Agreement', is not in fact a lease, but rather an agreement for the repurchase of the project by the so-called lessee, and does not meet the requirements of Article XIV, Section 14, Paragraph b. 3 of the Constitution, or of the provisions of R.S. 39:991 et seq., anticipating that a lease shall have been entered into prior to the issuance of the bonds, and that the terms of the proposed financing would include in addition to a pledge of the revenues derived from the project and a mortgage of the project property a pledge of the `rights of the Parish under and pursuant to the Lease Agreement * * *' and that there is no authority in this law for such a pledge, and finally, that the lease actually involves in a number of different respects an attempt on the part of the Parish to invest by assignment in a private corporate trustee discretionary powers properly and lawfully exercisable only by the Police Jury without any legal authority for such action. These contentions of plaintiff are likewise without merit. The argument of plaintiff fails to look at the whole of the constitutional and statutory authorities pursuant to which the lease agreement has been executed.
*895 There are a number of provisions in the lease agreement that would be normally and indispensably essential in the sound carrying out of the plan, such as the use of the bond proceeds in certain instances for the purpose of paying both principal and interest, and the provisions recognizing certain essential rights on the part of the trustee acting both for the industry and for the Parish; as well as the actual assignment to the trustee in certain cases of the rights to take steps to protect the interest of the bondholders and of the public authority. The express language of R.S. 39:993 contemplates the appointment of a trustee in connection with the execution of any mortgage or pledge to secure the payment of the bonds. The Louisiana Supreme Court in the case of Miller v. Town of Bernice, 186 La. 742, 173 So. 192 (1937) has held that where facilities are mortgaged to secure payment of bonds, the mortgage should contain the customary clauses assuring prospective purchasers that their rights will be protected and enforced. Certainly where a sizeable issue of bonds is authorized and sold, as of the character here involved, a trustee becomes necessary to protect and enforce not only the rights of the prospective purchasers of the bonds, but also to protect the interest of the public authority. These are simple customery, standard provisions in borrowing transactions of this kind, and such provisions have been upheld not only by the courts of this State, but also by the courts of other states. See Rodin v. State [Wyo.], 417 P.2d 180 (1966); Green v. City of Mt. Pleasant, supra.
The whole purpose of the agreement is to work out a sound plan in the accomplishment of the purposes anticipated at the best available interest rate and in all respects so as to best secure the interest of all of the parties to the agreement. The same legal principles apply as to the provisions of the lease pertaining to the use and purposes to which the project is to be employed, and the right of the lessee under the terms of the lease to buy subject to certain conditions either during or at the termination of the lease and the other rights and remedies that arise under the mortgage and pledge. The concern of the petitioner as to the interest of the Parish in the facilities to enforce the use of the property by the lessee for the purposes sought to the (sic) accomplished by the leasing of the properties, and the right of the lessee to purchase the properties under certain conditions, and remedies and consequences that may flow under the lease agreement if a default should occur are all considerations that have not only been generally considered in the Miller, LeBlanc and Albritton cases, supra, and in many other cases, but are essential steps in the total plan to better insure the permanent public welfare purposes for which the plan is intended."
Augmenting the views expressed by our colleague of the trial court, it is clear that the provisions of Section 1001, supra, (which enjoys constitutional status) renders Sections 991-1001, supra, self-operative, independently of the general laws of the state which regulate the activities of governmental agencies in the conduct of ordinary public affairs. Furthermore, the tenor of the constitutional provision as a whole grants governing authorities acting pursuant thereto discretion of the widest range absent fraud, deceit or provisions contrary to public morals or interest.
As indicated in the trial court's reasons for judgment, plaintiff offered no evidence to support the contention the amendment of Article 14 of the state constitution by the addition thereto of Section 14 (b. 3) was not properly adopted. It is settled law that a constitutional amendment is presumed valid until its invalidity is shown and judicially pronounced. Guillory v. Jones, 197 La. 165, 1 So.2d 65. State statutes are presumed valid until the contrary is shown. The presumption of validity is not *896 conclusive but rebuttable; the burden of proof, however, rests upon the one asserting the alleged invalidity. Interstate Oil Pipe Line Co. v. Guilbeau, 217 La. 160, 46 So.2d 113. It is basic law that the foregoing rule of interpretation is equally applicable to amendments to state constitutions. Plaintiff, having failed to allege or prove any specific ground of invalidity with respect to the constitutional amendment in question, its validity is presumed.
Attack is made on the West Baton Rouge lease on the ground it contains provisions authorizing release of portions of the leased premises prior to retirement of all bonds in violation of Section 993, supra. As contended by appellant, Section 993, supra, provides expressly that the mortgage and pledge shall remain in effect until the bonds have been fully paid in both principal and interest.
Section 8.6 of the Copolymer lease provides as follows:
"Section 8.6. Release of Certain Land. Notwithstanding any other provision of this agreement, the parties hereto reserve the right by mutual written consent at any time and from time to time to amend this agreement for the purpose of effecting the release of and removal from this agreement and the leasehold estate created hereby one or more portions of the Leased Land from time to time, to the extent permitted by law, as hereinafter provided. * * *"
Additional paragraphs of Section 8 proceed to detail the precise circumstances under which said releases may be effected.
A careful reading of the reputedly offensive provision indicates its own self-limitation "to the extent permitted by law, as hereinafter provided." The quoted phrase recognizes the existence of legal restriction upon release of property from the pledge and mortgage prior to full payment of bonds, therefore the effect of any given release can be determined only when it is sought to be executed. In view of the self-limiting effect of the section in question, it cannot be plausibly argued the section per se renders the entire lease invalid. There being no question of an attempt to execute a partial release of the mortgaged property at this time, the issue thus presented is premature.
Additionally, we note Section 13.4 of the lease provides a severability clause stating that if any clause, paragraph or part thereof be declared invalid, such invalidity shall not affect the remainder of the agreement.
Assuming, arguendo, a release were attempted in violation of the terms of Section 993, supra, it would not strike the entire lease with nullity. Under the severability clause, an illegal or unauthorized release of such nature would be limited in effect to the nullity of the release itself.
There remains only the argument the Copolymer lease is rendered invalid because of its stipulation that commencing ten years after its effective date and during the remainder of the primary term, the additional rental shall be in the equivalent of ad valorem taxes that would be assessable against the facility predicated upon its current value and existing tax rate. We find no merit in the argument that this provision is tantamount to taxing publicly owned property because said provision contemplates public ownership of the facilities during such period. Clearly this is not an assessment of publicly owned property. It is merely the establishment by mutual agreement of the contracting parties of a formula by which the rental shall be determined. The amount paid is not assessed against the police jury as taxes on its property. The sum is paid to the police jury by the Lessee as an agreed rental conformable to a previously established criterion of determination. Such a provision is unquestionably *897 authorized by the applicable constitutional and statutory authority.
Accordingly, the judgment of the trial court is affirmed at appellant's cost.
Affirmed.