Dear Mr. Ashworth:
You have requested the opinion of this office on the following issue:
 Must the statutes relative to public bidding be applied to the expenditure of the $2,750,000 appropriated to the Research Park Corporation in the Capital Outlay Act (Act 21 of the 2000 Regular Session) in light of the complex contractual arrangements involved in the expenditure of those funds and the applicable laws, court decisions and opinions of the Attorney General?
As you have identified in your opinion request, there are two particularly relevant provisions in the Capital Outlay Act (the Act) which must be considered. Section 2 includes the following provisions:
 The expenditure of funds appropriated in this Act shall be in conformity to all existing statutes relative to public bidding, contractual review, and R.S. 39:101 through 128 and any other statutes affecting the capital outlay program for state government, state institutions, and political entities.
 . . . . . . .
 Furthermore, all ports, levee districts and other non-state entities must have a fully executed cooperative agreement from Facility Planning and Control . . . before entering into any contracts which obligate state funding; and must follow all laws pertaining to public bidding.
The Research Park Corporation (the Corporation) was created by Act 882
of 1992 which makes clear that "such corporation shall not constitute an instrumentality of the state, a state agency, board, or commission, or a political subdivision." R.S. 17:3396.2. The Corporation is authorized, "To acquire, purchase, hold, use, improve, lease, mortgage, sell, transfer, and dispose of any property, real, personal, or mixed, or any interest therein" and "to create, develop, construct, operate, manage, and finance research and development parks, related facilities, and infrastructure". It is also authorized to "receive and accept from any source . . . grants for or in aid of any purpose of the corporation . . ." and to "make and enter into cooperative endeavor agreements with the United States, or its agencies, or with any public or private association, corporation or individual." R.S. 17:3396.5.
R.S. 17:3396.8 makes the Public Records Law, the Open Meetings Law and the Code of Governmental Ethics applicable to the Corporation with certain exceptions specified in that section, but does not subject the Corporation to the Public Bid Law. Therefore, it is clear that, but for the provisions of the Act, "the statutes relative to public bidding, contractual review, and R.S. 39:101-128" would not apply to the Corporation.
Pursuant to the above authority, the Corporation now seeks to expend the funds appropriated by the Act without compliance with the Public Bid Law, pointing to several court decisions and opinions of this office which support such a procedure. Your request describes the complex contracting arrangements and the highly technical facilities to be constructed with the use of trade secrets and proprietary design criteria. The technical nature of this construction is detailed in Attachment A to your request, which is appended to this Opinion.
We have been presented with the proposed Cooperative Endeavor Agreement (the Coop) among the Louisiana Department of Economic Development, the Research Park Corporation and Louisiana Technology Park (LTP), a non-profit corporation wholly owned by the Research Park Corporation. Exhibits attached to the Coop include a lease/sublease with Bon Carre, L.L.C., Louisiana Technology Park, L.L.C. and Solid Systems, Inc. (SSI) as parties to that lease and a first amendment to the lease; and an Outsourcing and Services Level Agreement between LTP and SSI. These documents represent literally hundreds of contractual obligations and cross obligations and commit each of the parties to make other contractual arrangements with specified vendors to assure the level of quality and performance without which the parties would not have agreed to proceed with this complicated arrangement for economic development.
To summarize the hundreds of pages which comprise these agreements, LTP, acting on behalf of the Corporation, will be using the capital outlay state funds and funds from other sources to complete the build-out of leased space which will be utilized by SSI and by the Corporation for its business incubator. SSI has committed to provide data storage and other high-tech services to LTP and its business incubator and to other clients. In order to provide those high-tech services, the space occupied by SSI must be built to precise specification utilizing systems and design criteria which are proprietary to SSI and which will be integrated into SSI's existing suite of management and monitoring systems for data center environments. SSI has made it clear that it cannot risk sharing its proprietary systems and criteria with a contractor with whom it has no established relationship of trust and performance.
Prior opinions of this office have held that in applying the Public Bid Law, public entities may only require that bidders have the appropriate Louisiana contractor's license and may not require specific experience, nor pre-qualify bidders based on special criteria. Opinion Numbers 85-630 and 98-497 to this effect are attached. The documentation which we have reviewed relative to the Louisiana Technology Park construction project indicates that the esoteric specifications support requirements for contractor expertise and experience with such specialized projects and that a routine public bid process open to any licensed contractor would be wholly unworkable, unacceptable to the private sector partners, and may well defeat the entire project.
Circumstances such as this have been found by our courts on several previous occasions to justify proceeding with complex projects without public bid procedures otherwise mandated by law. Not coincidentally, all three cases reported on this issue involve complex public-private industrial development cooperative efforts such as the one under consideration by the Corporation. These cases are Kliebert v. SouthLouisiana Port Commission (La.App. 4th Cir., 1966) 182 So.2d 814, writ denied 183 So.2d 652; Hebert v. Police Jury of West Baton Rouge Parish
(La.App. 1st Cir., 1967) 200 So.2d 877, writ denied 201 So.2d 520; andJTS Realty Corp. v. City of Baton Rouge (La.App. 1st Cir., 1986)499 So.2d 274, writ denied 503 So.2d 19.
In Kliebert the court found that "It would be an unwarranted restriction on the operation of the Commission to require it to submit an intricate agreement of the type proposed here to the rigors of the competitive bidding statute. It must be concluded that the power granted to the Commission necessarily carried with it the implied authority to negotiate contracts consistent with its purpose."
Hebert was another case involving the Public Lease Law, a public body and an industrial development cooperative effort with a private entity. There, the court found, "The Public Contract Law cannot be applied to such a situation and in particular where in many instances complex industrial facilities must be constructed by manufacturers which own or have access to certain trade secrets, patents and other processes that are unavailable to general contractors." The complex factors at work in the Hebert case apparently were not unlike those woven through the proposed Louisiana Technology Park construction.
In JTS Realty the court held that ". . . if the contract is too complex to be the object of bidding, the contract is not void for failure to apply the public bid laws." The court found, "the proposal solicited by the City-Parish from the public was far too complex to be the object of the public bid laws." The description of the series of transactions found in JTS Realty seems simple when compared to the transactions which will be required to successfully achieve the objectives of the Louisiana Technology Park.
In conclusion, it appears that the complexity of the specifications, the use of proprietary systems and criteria, the crucial contractor expertise and experience, and the intricacy of the multi-layered contractual arrangements essential to bring about this important economic development project all support and justify proceeding with the Louisiana Technology Park without compliance with the Public Bid Law as would otherwise be required by the provisions of the Capital Outlay Act. The provisions of Act 21 of 2000 are subject to the same principal of statutory interpretation and application which were brought to bear by our courts in Kliebert, Hebert and JTS Realty. Rather than see the legislative appropriation for the Louisiana Technology Parkfail due to the overwhelming intricacy of the essential arrangements, it is more appropriate that the project proceed pursuant to the rationale which has been jurisprudentially developed for dealing with such dilemmas.
Therefore, it is our opinion that our "statutes relative to public bidding", as interpreted by our courts over the last thirty plus years, sanction exceptions to the requirement of public bidding for projects such as the LTP which are highly complex and require specialized contractor arrangements and skills. We feel that the Louisiana Technology Park project being undertaken by the Research Park Corporation qualifies as one of those exceptions and may proceed pursuant to the proposed contract documents submitted to this office.
This opinion is limited in scope and application to the unique facts presented for our consideration with your request involving the Louisiana Technology Park project of the Research Park Corporation. The conclusions expressed here are not intended to apply to other projects or parties, each of which must be considered on its own individual facts and the law applicable thereto.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: ________________________________ GLENN R. DUCOTE Assistant Attorney General
RPI:GRD:dra